685 So.2d 1080 (1997)
James C. BOYLE and Judith Boyle
v.
BOARD OF SUPERVISORS, LOUISIANA STATE UNIVERSITY.
No. 96-C-1158.
Supreme Court of Louisiana.
January 14, 1997.
*1081 Gail N. McKay, Baton Rouge, for applicant.
Hillar Clement Moore, III, Marabella & Moore, Baton Rouge, for respondent.
Lawrence S. Kullman, New Orleans, Elizabeth Baker Murrill, Baton Rouge, for amicus curiae Louisiana Trial Lawyers Association.
IAN W. CLAIBORNE, Justice Ad Hoc.[1]
On March 8, 1989, Judith Boyle, a 40-year-old student, was injured when she tripped and fell on a sidewalk of Louisiana State University and Agricultural & Mechanical College (LSU) in Baton Rouge. She sued the Board of Supervisors of LSU contending her injuries were caused by a defective sidewalk. Her husband, James Boyle, joined in the suit seeking damages for loss of consortium.

FACTS
Having just finished a mid-term exam, Judith Boyle was crossing the LSU campus en route from the Student Union to the parking lot of Kirby Smith dormitory where her car was parked. Upon exiting the Union at approximately 4:00, she walked toward Tower Drive in a northeasterly direction. She then crossed Tower Drive and stepped onto the sidewalk on Tower Drive in front of David Boyd Hall. As she walked by Boyd Hall, Mrs. Boyle suddenly fell forward and landed on the pavement of the sidewalk. She threw out her arms in an attempt to break her fall, but sustained injuries to her right arm, her knees, and her face.
On March 5, 1990, Mrs. Boyle filed suit against LSU alleging that a depression in the sidewalk caused her fall and this depression rendered the sidewalk unreasonably dangerous. After trial on the merits, the trial court ruled in favor of plaintiff finding the condition of the sidewalk was a defect, that the defect was a cause in fact of Mrs. Boyle's injuries, and that LSU had constructive knowledge of the defect. The trial court held LSU liable for Mrs. Boyle's injuries. Judgment was rendered including awards to Mrs. Boyle for $100,000.00, and to Mr. Boyle in the amount of $7,500.00 for his loss of consortium claim.
LSU appealed. The First Circuit Court of Appeal, finding no manifest error, affirmed the judgment of the trial court. This court granted certiorari to determine the correctness of the rulings of the courts below. Boyle v. Board of Supervisors of Louisiana State University and Agricultural and Mechanical College, 95-1803 (La.App. 1st Cir. 4/4/96); 672 So.2d 254.

STANDARD OF REVIEW
LSU first argues that the appellate court misapplied the manifest error standard in determining whether the trial court erred in deciding whether or not a sidewalk depression constitutes an unreasonably dangerous condition. LSU suggests that the determination of an unreasonable risk of harm or dangerous condition is a legal conclusion which is not protected by the manifest error standard. LSU further argues the findings of fact as to the condition of the sidewalk are to be accorded the benefit of the manifest error rule, but the application of those findings of fact to the final legal determination of whether the condition constitutes a defect that creates an unreasonable risk of harm should not. Green v. Thibodaux, 94-1000 (La.App. 1st Cir. 10/6/95) 671 So.2d 399.
Mrs. Boyle, however, maintains that the court of appeal applied the correct standard or reviewthe manifest error standard. "The trial court's findings that a defect existed... is a factual finding which should not be reversed on appeal absent manifest error." Stobart v. State, 617 So.2d 880, 882 (La.1993).
Regardless of the standard of review that should be applied to the determination of unreasonable danger or risk of harm, we find *1082 that the trial court was manifestly erroneous in its findings and therefore reverse.

MERITS
Plaintiff's claim against LSU for damages allegedly resulting from a vice or defect in the sidewalk is rooted in Louisiana Civil Code article 2317 which states:
We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody....
The strict liability imposed by Article 2317 requires the plaintiff to prove that the vice or defect of the thing is a condition which poses an unreasonable risk of harm to others. A determination of whether a thing presents an unreasonable risk of harm should be made "in light of all relevant moral, economic, and social considerations." Celestine v. Union Oil Co. of California, 652 So.2d 1299 (La. 1995), quoting Entrevia v. Hood, 427 So.2d 1146 (La.1983).
Courts have consistently held that state entities are not liable for every irregularity in a street or sidewalk. Valet v. City of Hammond, 577 So.2d 155, (La.App. 1 Cir. 1991), Fortune v. City of New Orleans, 623 So.2d 701, (La.App. 4 Cir.1993). This Court, in White v. City of Alexandria, 216 La. 308, 43 So.2d 618 (1949) reversed the lower courts and held that a slab of sidewalk which was one-half an inch to two inches lower than the contiguous slabs did not present an unreasonable risk of harm to a plaintiff who was walking along the sidewalk and tripped on the irregularity. In so holding, the Court stated:
[A] municipality is not an insurer of the safety of pedestrians. It must keep the sidewalks reasonable safe, but the maintaining of them in perfect condition is not necessary. To render it liable in damages the defect complained of must be dangerous or calculated to cause injury.
For determining what is a dangerous defect in sidewalk ... there is no fixed rule; the facts and surrounding circumstances of each particular case control. The test usually applied, however, requires an answer to the question of whether or not the walk was maintained in a reasonable (sic) safe condition for persons exercising ordinary care and prudence. White, supra [43 So.2d] at 620.
The sidewalk on which Mrs. Boyle was walking is made up of two concrete blocks placed side-by-side. Each block is five feet wide, which makes the sidewalk a total of ten feet in width. In the area where Mrs. Boyle was walking there were some bushes which encroached upon the sidewalk on one side, and on the side next to the street there were parked cars with their bumpers extending over the sidewalk. The trial court found that the total space Mrs. Boyle had to walk in was six feet.
The depression which caused Mrs. Boyle to fall was located in the upper right corner of the left concrete block.[2] Testimony at trial varied as to the depth of the depression. Mike Frenzel, plaintiff's safety expert, testified that the depression was about one inch in one corner and from one-half to fiveeighths of an inch in the other. Mr. Frenzel also testified that a trip and fall may result from a defect as small as one-sixteenth of an inch, but any depression over one-half of an inch constituted a "tripping hazard" in his opinion. Greer Coursey, a civil engineer called by plaintiffs as a concrete expert, testified that he measured the depression without a ruler after it had been repaired. He estimated that it was one inch to one and oneeighth inch in the corner. Because it was an estimate, he put the figures as one inch to two inches in his report. Mr. Coursey further testified that he considered anything over one-half an inch to be a hazard. Gary Durham, Director of Public Safety at LSU, measured the depression at about one-half inch. Joel Hebert, Assistant Director of Facility Maintenance for LSU, testified that the depression looked to be about one-half an inch. He testified that the grout used to repair the defect some time after the accident *1083 was seven-sixteenths of an inch in depth.
The trial court, in "Reasons for Judgment", found the depression to be anywhere from one-half inch to one inch or more. Then, relying on testimony from the experts that anything over one-half an inch is likely to cause an accident, the court found the sidewalk condition to be a defect. Reliance on the expert testimony resulted from the court's impression that the testimony was based on assumptions which appeared reasonable.
The finding of the existence of a defect alone is not a sufficient analysis to establish liability. The trial court did not discuss whether the defect created an unreasonable risk of harm. The court of appeal, in affirming the trial court, found that the court must have implicitly found the defect unreasonably dangerous in reaching its conclusions. It is not necessary that the fact finder state the factors considered and its findings on each. However, we find that the riskutility balancing test of Entrevia, supra and Langlois v. Allied Chemical Corporation, 258 La. 1067, 249 So.2d 133 (1971), compels a different conclusion from that reached by the trial court.
The risk-utility balancing test weighs factors such as gravity and risk of harm, individual and societal rights and obligations, and the social utility involved. The gravity of injury was properly considered by the district court. Mrs. Boyle's injuries were substantial. Both bones in her right arm were broken, her left elbow was injured, her face was cut, and she fractured several teeth.
The risk of injury, on the other hand, apparently is not great. Testimony at trial indicated that this relatively small depression had been developing due to the Louisiana climate and settling Louisiana soil for four to ten years. The depression is in a high traffic area, and Mrs. Boyle is the only person ever reported to have fallen there. The district court refused to consider the past accident history of the defect in question. The court stated that if "the situation is dangerous, there is going to be a first accident sometime." The averment is not subject to contradiction, but the fact that the first accident did not occur during the defect's existence of several years while heavy traffic provided the exposure, is a factor to be taken into consideration along with the size of the defect, in determining the relative risk of injury.
Weighing against the risk and gravity of injury is the social utility, including cost of repair. The utility of sidewalks on university campuses is clear as pointed out by the court of appeal. It carries great weight in the equation. Furthermore, LSU has over 22 miles of sidewalk on its campus. (One witness estimated 25 miles.) To police this much ground and keep it in perfect repair is beyond reasonable expectation for LSU or any other university. Joel Hebert, who is responsible for sidewalk maintenance at LSU, testified that until student work funding was no longer available a student worker would be hired to walk the sidewalks looking for problems. The student was instructed to note any defect greater that two inches. Once these defects were found, they were placed on a deferred maintenance list until resources became available to repair the sidewalks.
The district court specifically ruled that evidence relating to cost of repair would have no bearing on the question before the court. Nevertheless, the court in Entrevia, supra, held that economic considerations are properly taken into account upon the issue of social utility and unreasonableness of the risk of harm. Testimony at trial indicated that it would cost LSU from $50.00 to repair areas like the defect in question with grout, which will deteriorate in a short period of time and perhaps create a more serious condition, to $200.00 to take out and replace the uneven slab of concrete. The cost of repair to be considered includes not just the minor costs of repairing the single defect in question, but the cost of repairing all similar or worse defects existing in the twenty-two or more miles of sidewalk. Otherwise university officials would be placed in the position of having to predict where the next accident will take place regardless of the relative seriousness of the defect. Gary Durham, executive director of public safety and risk management for the university, testified he knew *1084 personally "of a couple of areas that have some problems" in the approximately 25 miles of sidewalks. There is nothing in the record to indicate the extent of his personal knowledge. He did not pretend to know of all the existing defects. He further stated that he did not consider a depression of onehalf to one inch to be a problem. As stated above the burden of proving the existence of a defect which poses an unreasonable risk of harm in an action based on Article 2317 rests with the plaintiff.
Considering all of these factors, we conclude that a defect the size of the one Mrs. Boyle tripped over, does not present an unreasonable danger.
Our finding that no defect cognizable under Article 2317 existed renders unnecessary any discussion of constructive notice under LSA-R.S. 9:2800.

DECREE
For the foregoing reasons, we reverse the judgment of the trial court and hold that the sidewalk depression did not create an unreasonable risk of harm.
CALOGERO, C.J., not on panel.
*1085 
NOTES
[1] Judge Ian W. Claiborne, 18th Judicial District Court, and Judge Graydon K. Kitchens, Jr., 26th Judicial District Court, participating as associate justices ad hoc in place of Justice Jack C. Watson and Justice E. Joseph Bleich.
[2] See attached photo of accident scene. This was exhibit Boyle-4 at trial; however, only that part of the exhibit showing the depression was reproduced for purposes of this opinion, and the arrow emphasizing the depression was added by us.