I iGAUDIN, Judge.
This is a slip and fall case tried before a jury in the 24th Judicial District Court. Mrs. Robert G. (Juliet) Hebert fell on October 80, 1998 while descending a concrete handicap ramp leading to the parking lot in front of the Veterans Veterinary Hospital in Metairie, Louisiana.
After a four-day trial ending on February 1,1996, the jury awarded $193,500.00 to Mrs. Hebert while finding her five percent at fault for the accident. The H-D-W Company, which owned the business complex, including the parking area, was found 90 per cent at fault. Dr. Benjamin Stone, one of the owners of Veterans Veterinary Hospital, which leased from H-D-W Company, was found five per cent at fault. The jury failed to award anything to Mr. Hebert for loss of consortium.
For the following reasons, we affirm all of the jury’s determinations except the failure to award anything to Mr. Hebert. The testimony amply supports an award to him for loss of consortium, which we set at $7,500.00.
Mrs. Hebert, 64 years of age at the time, had been to Veterans | Weterinary Hospital. Returning to her automobile, she was walking down a handicap ramp when she slipped and fell off the ramp onto the flat concrete area adjacent to the ramp.
Photographs in evidence, including copies of those attached to this opinion, show the ramp and a long crack in the cement running parallel to the ramp and very close to it. Mrs. Hebert’s right foot, she said, “... got jammed in the crack, and it caused my body to go forward and I twisted.”
At one place in the depression, according to the record, the crack is three and a half inches wide and two and a half inches deep.
The commercial area of approximately 14,-000 square feet of rentable space at 8601 Veterans Boulevard, where the Veterans Veterinary Hospital is located, is owned by H-D-W Company. Other parts of the complex are leased to Zack’s Frozen Yogurt, New Orleans Tuxedo and a beauty salon. The hospital occupies 6,000 square feet.
The ramp leading to the hospital had been constructed by Dr. Stone and his associate Dr. Thayne Short after they received two letters from Jefferson Parish in 1990 or 1991 saying that a handicap ramp to the hospital had to be built. Dr. Stone said that he asked Dr. Homer Watts, one of the owners of HD-W Company, to install a handicap ramp but Dr. Watts said it was the responsibility of the hospital, not his.
Dr. Watts testified that he was “... grandfathered in and didn’t have to put a ramp in ...” In any event, Dr. Stone, without any input or advice from an engineer or architect and without applying for or obtaining a building permit, had the ramp built in July, 1991 by Self and Self, apparently a father and son cement-laying business.
Wilfred Gallardo, a safety consultant and the only expert witness who testified at trial, said that a dangerous and unreasonable risk of harm, and |4what caused Mrs. Hebert to slip and fall, was a combination of an unsafe ramp and the large defect in the nearby flat cement.
Gallando said that the ramp was unsafe because the slope was too steep and because it didn’t have guard rails. However, Gallan-do stated:
“Had it (the accident site) not had the cracks in the cement or the breaks there, then a person would just fall on cement and would not get gorges from broken areas of the cement.”
At what point, Mrs. Hebert was asked, did your ankle “crack”? She replied: ‘When I hit the crack.”
*996 The jury, after listening to Gallardo, Mrs. Hebert and the other witness, likely decided that the concrete indentation was more responsible for Mrs. Hebert’s injuries than the unsafe handicap ramp but that, regardless, H-D-W Company was solely responsible for maintaining the ramp and the flat concrete area where the crack was in. In direct answers to submitted interrogatories, the jury stated that H-D-W Company had custody of both the ramp and parking lot and that Veterans Veterinary Hospital had custody of neither.
Dr. Stone testified that he and Dr. Short leased 6,000 square feet of interior space from H-D-W Company; accordingly, they were responsible for interior repairs while the lessor was responsible for everything outside. Nothing in the lease itself or the site plan (drawing) attached to the lease indicates or even suggests otherwise despite Dr. Watts’ contrary testimony.
Cause-in-faet is for a jury or trial judge to decide and such findings are not disturbed on appeal absent manifest error. Slip and fall claims rarely if ever present synonymous facts and circumstances; such claims should be decided on a case-by-ease basis.
pin Boyle v. Board of Supervisors, Louisiana State University, 685 So.2d 1080 (La. 1997), which reversed an award to a slip-and-fall plaintiff, the Supreme Court of Louisiana, citing prior jurisprudence, stated at page 1082:
“For determining what is dangerous ... there is no fixed rule; the facts and circumstances of each particular case control. The test usually applied, however, requires an answer to the question of whether or not the walk was maintained in a reasonable safe condition for persons exercising ordinary case and prudence.”
In Boyle, the sidewalk depression was relatively small (one-half to one inch) and there was no evidence that the defect was known to LSU’s public safety and risk management personnel. The “crack” Mrs. Hebert stepped into, however, was much larger than in Boyle and was known to Dr. Watts, who said that he knew of the concrete defects but that, in his opinion, none of them required attention or repair. The jury concluded otherwise.
Mrs. Hebert was awarded $193,-500.00, itemized by the jury as follows:
$165,000.00 for past and future pain and suffering, disability and scarring;
26,000.00 for past medical expenses, and
2,500.00 for future medical expenses.
She suffered a trimalleolar fracture of her right ankle which is a fracture of the three bones comprising the ankle. Dr. Charles Murphy, an orthopedic surgeon and the only medical expert to testify at trial, performed what was described as an open reduction and internal fixation of the ankle on November 4, 1993. The broken bones were put back in place as near normal as possible with surgical screws and plates. Mrs. Hebert was bedridden for two weeks before a cast was applied. During Mrs. Hebert’s ^rehabilitation, she was in a wheel chair and had to use crutches and a walker.
A second surgery was performed by Dr. Murphy on March 9, 1995 to remove the screws and plates because they were causing soreness.
Dr. Murphy testified that Mrs. Hebert has scarring, that she will have degenerative changes because of the injury and that her arthritis will continue to get worse. When Dr. Murphy last saw Mrs. Hebert on January 9, 1996, he said that she still had pain, soreness, swelling and a slight limp. Future surgery, Dr. Murphy stated, is a possibility, but that, in his opinion, she will need nonsurgical medical treatment for the rest of her life. He estimated her future medical expenses at $2,500.00, the amount awarded by the jury.
Mrs. Hebert was very active before her fall. She said that she can no longer help in the family’s vending machine business or do normal household chores. She takes Tylenol daily. With a life expectancy of 17.9 years at time of trial, Mrs. Hebert will continue to suffer. She has a 15 per cent impairment to *997 the lower right extremity and a six per cent whole person impairment, Dr. Murphy said.
Appellants argue that the general damages award is excessive and should be reduced. We agree that the award is on the high side but we cannot say the award was an abuse of the wide discretion afforded juries.
Among the district court errors assigned by appellants is the refusal of the trial judge to admit into evidence a written transcript of a tape recorded statement given by Mrs. Hebert to an adjuster. The jury heard the tape in its entirety and Mrs. Hebert was questioned at length about its contents. The tape, however, which is in evidence, has long gaps of silence while other parts are inaudible. The adjuster who took the statement was not called as Ra witness.
A trial judge has vast discretion in the admission of evidence; here, there was no error in his refusal to admit the written transcript.
As previously stated, the only amendment we make to the jury verdict is the inclusion of $7,500.00 to Mr. Hebert for loss of consortium, a term that includes sexual relations and also love, affection and companionship and the performance of material services. See Broussard v. Meaux, 649 So.2d 661 (La.App. 3 Cir.1994). Because of his wife’s impairment, Mr. Hebert testified that he had to do “everything,” such as cooking, vacuuming the house and washing clothes, and that Mrs. Hebert no longer assists in banking or in the purchase of stuffed animals for their vending machines. The Heberts, who have been married for 40 years, can no longer take long walks, ride horses or go fishing together. It was a jury error not to award Mr. Hebert a fair sum for his losses.
As amended, we affirm the jury verdict with H-D-W Company and its insurers to bear the costs of this appeal.
AFFIRMED AS AMENDED.
*998 Ja.
ATTACHMENT
[[Image here]]