| JONES, Judge.
Plaintiff/appellant, a 61-year old visitor to the French Quarters in New Orleans, was seriously injured after tripping over an elevated manhole cover. She and her husband sued the Sewarage and Water Board (“SWB”) and the City of New Orleans. On appeal, she seeks review of the February 19, 1997, judgment of the trial court in favor of the defendant/appellee, the SWB. We reverse and render judgment.
STATEMENT OF FACTS
Plaintiff/appellant, Mrs. Jewel Banks, a 61-year old woman at the time of the accident in question, was visiting New Orleans to attend her granddaughter’s college graduation. On June 8, 1994, plaintiff was staying at the Bienville House in the French Quarters. Mrs. Banks and her granddaughter left her hotel and began walking side by side on Decatur Street. As the two were walking, Mrs. Banks tripped on a SWB manhole cover. The lip of the cover was raised approximately one to two inches above the manhole casing in which the cover sat, and the cover on top of the casing was not level with the street. Mrs. Banks’ toe struck the raised cover, causing her to trip and fall forward onto her face and elbows. The force of the fall caused the ball of Mrs. Banks’ elbow to shatter. At the time of her fall, l2Mrs. Banks had dental implants and the fall caused two of her artificial teeth to break. The fall also broke the retaining bar that was attached to her surgical dental implants.
Mrs. Banks was transported to the emergency room at the Tulane University Medical Center, where she was advised to have immediate surgery. She returned to Mobile, Alabama, where her personal surgeon operated on her elbow. The surgeon placed metal screws in her arm to affix the shattered elbow joint, and her arm was placed in a cast. Mrs. Banks also received medical care from her dentisl/oral surgeon to repair her implants. Mrs. Banks oral surgeon also anticipated future medical treatment.
Mrs. Banks complained that her pre-exist-ing back condition was aggravated by the fall. Mrs. Banks described her back pain as “managed” prior to the accident. However, subsequent to the fall, the plaintiffs pain became constant, and the nature of the pain changed to include “radicular” pain, which was not present prior to the accident. As a result of her injuries, Mrs. Banks incurred over $16,000 in medical bills.
On May 30, 1995, Jewel Banks and Gary Banks sued the SWB, owner of the manhole cover, and the City of New Orleans for failure to properly inspect, maintain, and repair the manhole cover and the surrounding sidewalk. A bench trial was held on February 19, 1998. At trial, Newton Thomas, III, a supervisor with the SWB, admitted that the sewer casing and cover were owned and maintained by the SWB since its original installation in 1909. Thomas reviewed the SWB’s records and determined that only two documents could be found, since 1909, that reflected work performed on the manhole cover and casing in question. | sAccording to Mr. Thomas’ records, the SWB installed a *529 water meter at the location of the accident in 1975, and again in 1991. Thomas also testified that after the first water meter was installed in 1975, the SWB required an employee to do a monthly reading of the meter which required them to lift the metal cover from the casing, read the water meter, and then replace the metal cover on its casing.
Mr. Holt Fastring, the plaintiffs expert safety and mechanical engineer, testified that after examining the meter casing and cover at issue, he discovered that the casing contained a “lip” that could easily accumulate sand and dirt over time. Fastring also testified that when the metal cover was raised, dirt and debris would fall onto the lip of the casing. Fastring opined that the only two explanations for the elevated cover were that either the cover was replaced with a cover that sat above the casing; or dirt and debris accumulated over a long period of time causing the casing lip to become elevated, thus elevating the cover. The defendants did not object to Fastring’s expertise or qualifications.
However, the SWB’s records reflect no reported changes to the casing or cover since the installation of the manhole in 1909. Therefore, in the absence of any evidence that a cover “switch” occurred, the only hypothesis that remains is that SWB employees, over an extended period of time, allowed dirt to accumulate on the casing lip, thereby allowing the cover to be elevated above the sidewalk. It was on this elevated cover that Mrs. Banks tripped and was seriously injured.
The City of New Orleans, defendant/appel-lee, was dismissed after the SWB rested its case. Counsel for the SWB asked that judgment be entered for the defendant, citing Boyle v. Board of Supervisors, LSU, 96-1158 (La.1/14/97); 685 So.2d 1080. The trial court rendered its decision in favor of the defendants, following the directive of the Boyle decision. The trial court ruled in favor of the |4defendants, despite its strong reservations about applying Boyle to the case subjudice. It is this ruling by the trial court that the appellants herein appeal.

DISCUSSION

In its Reasons for Judgment, the trial court applied Boyle in dismissing the plaintiffs’ claims. In Boyle, a pedestrian sued Louisiana State University for injuries sustained in a fall allegedly caused by a defective sidewalk. The trial court found that the condition of the sidewalk was a defect, that the defect was the cause in fact of plaintiffs injuries, and that LSU had constructive knowledge of the defect. The trial court awarded plaintiff $100,000 in damages and also awarded her husband $7,500 for loss of consortium. The Court of Appeal affirmed, and on writ of certiorari, the Supreme Court held that ajé to 1 inch depression on LSU’s sidewalk did not present an unreasonable danger such that LSU could bé held strictly liable for the pedestrian’s injuries. The Supreme Court found that when weighing the risk and gravity of injury against the social utility, including the cost of repair, “To police this much ground (22 miles) and keep it in perfect repair is beyond reasonable expectation for LSU or any other university.”
However, the trial court expressed its opinion that, notwithstanding Boyle, the 1 inch elevated cover did present an unreasonable risk of harm, because it existed for such an extended period of time without remedy. The trial court struggled with its decision to follow Boyle, expressing its belief that the SWB clearly breached its duty to the public, that the plaintiff was surely entitled to prevail as a result of that breach.
The plaintiffs contend that, under the facts of the present ease, Boyle does not demand a verdict in favor of the defendants. The plaintiffs assert that Boyle is a fact-based ruling, dependent on a weighing of many factors. Thus,plaintiffs 15assert that Boyle does not bar plaintiffs from recovering, because the present factual situation is so different from Boyle, such that the factors examined in Boyle should result in a dramatically different conclusion herein. We agree.

FACTORS TO DETERMINE LIABILITY

Plaintiffs’ claim against the defendants for damages allegedly resulting from a vice or defect in the sidewalk is rooted in Louisiana Civil Code Article 2317 which states:
*530 We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody ...
In order for strict liability to be imposed under Louisiana Civil Code Article 2317, a plaintiff must prove that the vice or defect of a thing is a condition that poses an unreasonable risk of harm to others. The determination of whether a thing presents an unreasonable risk of harm should be made “in light of all relevant moral, economic and social considerations.” Boyle, supra at 1082; citing Celestine v. Union Oil Co. of California, 652 So.2d 1299, 1303-1304 (La.1995); quoting Entrevia v. Hood, 427 So.2d 1146 (La.1983).
Courts have consistently held that state entities are not liable for every irregularity in a street or sidewalk. Valet v. City of Hammond, 577 So.2d 155 (La.App. 1 Cir.1991); Fortune v. City of New Orleans, 623 So.2d 701 (La.App. 4 Cir.1993). However, the particular facts and circumstances of this case prove that Boyle should not be followed or applicable herein.
The trier of fact is required to weigh factors such as gravity and risk of harm, individual as well as societal rights and obligations, and the social utility involved. The court in Boyle found that the small depression in the sidewalk which had ^developed due to climate and settling soil was found not to produce liability, although the plaintiff was seriously injured when she tripped over the depression. Boyle, supra at 1083. The Boyle court also found that it was unreasonable to expect LSU to police 22 miles of sidewalk, prevent^ to 1 inch depressions, and to keep the 22 miles of sidewalk in perfect repair. Id.
However, unlike Boyle, when weighing the risk of harm and gravity of injury against the social utility and the cost of repair, it may have been impossible to keep the manhole cover in perfect repair, but it would not have been impossible or beyond reasonable expectation to keep the manhole cover in good repair.
One factor that may be distinguished from Boyle, was the “ease of discovering and correcting the defect.” Correcting the defect in the manhole cover was not similar to the impossibility of policing 22 miles of sidewalk. The SWB workers knew of the defect and they saw the elevated cover every month when they read the water meter. The plaintiff argues, and we agree, that the SWB employees, who were already inspecting the water meters on a monthly basis, could have simply carried a small whisk brush or some other tool to sweep away any accumulated dirt or debris. The task would not even require a regular cleaning, because testimony by the plaintiffs expert established that it took several years for dirt to accumulate to the inch-high elevation that raised the water meter cover. Therefore, we find that the meter cover would have remained flush with the casing and the level sidewalk had this one precautionary step been taken.
Moreover, in Entrevia and Boyle, it was held that “economic considerations” could be taken into account with regard to the issues of social utility and unreasonableness of the risk of harm. In Boyle, witnesses estimated the cost of repaving the sidewalk to be approximately $50 to $200 for each defective place inj7the sidewalk and the costs would be recurring over time as the sidewalk continues to deteriorate. The Supreme Court held that imposing such a duty on LSU would be both an unreasonable and impossible thing to require of LSU. Whereas, in the present case, a small whisk brush, which could have effectively corrected the problem, could have been purchased for a nominal sum.
In White v. City of Alexandria, 216 La. 308, 43 So.2d 618 (La.1949), the Court found that there is no fixed rule for determining what is a dangerous defect in a sidewalk, but the facts and surrounding circumstances of each particular case controls.
In the case subjudice, Mrs. Banks was a visitor to New Orleans and she was not familiar with the area. She was simply walking down a well-traveled street with her granddaughter to get breakfast. The ease with which the SWB’s employees could have corrected the defective condition on their monthly inspection, versus the difficulty an *531 elderly tourist would have in identifying the problem, suggests that the responsibility should lie with the entity which ignored the problem and allowed the problem to exist. The duty to provide a safe walkway for pedestrians is surely within the scope of the SWB, which places its casings and covers in the middle of pedestrian walkways.
An owner or custodian of immovable property has the duty to discover any unreasonably dangerous condition and to either correct the condition or warn of its existence; the duty is the same regardless of whether fault is asserted under negligence or strict liability. Deumite v. State of Louisiana, 94-1210 (La.App. 1 Cir. 2/14/97); 692 So.2d 1127, 1141; Zellers v. National American Insurance Company, 514 So.2d 234 (La.App. 5 Cir.1987).
I ^QUANTUM
The trial court determined that the manhole cover in question was a defect that posed an unreasonable risk of harm, stating that “if the condition existed for as long as it apparently did, it is unreasonably dangerous.” The trial judge further stated that “[cjlearly in my mind, the SWB owed a duty, it breached a duty, and as a result of its breach, this lady (Mrs. Banks) sustained damages.” We agree.
The trial court was of the belief that the plaintiff should prevail in this matter, based on the facts adduced at trial. The trial court also opined that, under the facts of the present case, Mrs. Banks should be entitled to recover for all of the medical expenses that she has incurred, including pain and suffering associated with the fall, the surgeries to her arm, the cost of future implant surgeries, and the convalescent period after the surgeries. The trial court was also of the opinion that her husband, Mr. Banks, would be allowed to recover for a loss of consortium because Mr. Banks not only lost some of his personal relations with his wife, but he also lost some of the help and assistance of his mate.
The trial court determined that Mrs. Banks should have been awarded $175,000 in general damages, $16,500 for past medical expenses, $75,000 for future medical expenses, $20,000 for loss of earnings and earning capacity, $50,000 to Mr. Banks for a loss of consortium. The trial court also stated that the defendants should have been assessed all court costs and judicial interest.
The trial court felt that it was constrained by the Louisiana Supreme Court’s recent holding in Boyle, thus, it subsequently ruled in favor of the defendants and denied the plaintiffs recovery. We find that the trial court erred in not distinguishing the facts in Boyle from the case herein and in failing to rule in favor of the plaintiffs. We further find that the trial court was not constrained to deny the |9plaintiffs recovery. Nevertheless, the trial court was correct in its belief that the manhole cover was in fact a defect that posed an unreasonable risk of harm to Mrs. Banks. The trial court was also correct in its assessment of damages to the plaintiffs.

CONCLUSION

When one considers all the factors above, the totality of the circumstances favors the imposition of liability on the SWB. There was an unreasonable risk of harm to pedestrians who could not readily determine the defect by ordinary diligence, but who nevertheless could easily trip over the raised meter cover. While it would have been absurd to hold LSU liable for failure to constantly patrol, closely inspect, and repair every defect in over 22 miles of sidewalk, in the present case, the SWB employees were already closely examining the water meters in question. Thus, it was the defendant’s duty to resolve the known and easily correctable defect.
SWB breached its duty to Mrs. Banks when it allowed the manhole cover to become a defective condition. We find that Mrs. Banks is entitled to damages because the SWB negligently failed to take simple corrective measures to remove the unreasonable risk of harm.

DECREE

For the foregoing reasons, the judgment of the trial court is reversed, and the judgment of this Court is hereby rendered.
REVERSED AND RENDERED.
WALTZER, J., Concurs with Reasons.