769 So.2d 171 (2000)
Beadie KENDALL, Plaintiff-Appellant,
v.
WEINGARTEN REALTY MANAGEMENT CO., et al., Defendants-Appellees.
No. 33,903-CA.
Court of Appeal of Louisiana, Second Circuit.
September 27, 2000.
*172 Bruscato, Tramontana & Wollerson by J. Antonio Tramontana, Monroe, for Appellant.
Hudson, Potts & Bernstein by Brady D. King, II, Monroe, for Appellees.
Before WILLIAMS, GASKINS and KOSTELKA, JJ.
KOSTELKA, J.
In this fall on premises liability case, plaintiff, Beadie Kendall ("Kendall"), appeals a district court judgment denying her claims against Weingarten Realty Management Company ("Weingarten Realty"), the company that owns and manages the parking lot where the incident occurred. Finding no manifest error in the trial court's findings, we affirm.

Facts and Procedural History
In the early evening of April 28, 1996, Beadie Kendall, a sixty-three-year-old woman, went to the County Market grocery store along with her nephew, Eddie Kendall. In the parking space adjacent to where the Kendalls parked, there was an indentation ("pothole") measuring twelve *173 inches long by eight inches wide and one and one-half inches deep. The pothole was filled with water from a rainfall earlier that day, and Kendall testified that she took it to be a puddle of water. Isaac Tillman, an eyewitness to the accident, testified that the pothole appeared to him to be a puddle of water or wet cement. Kendall testified at trial that the pothole caused her fall as she was exiting her nephew's vehicle, although the evidence is inconsistent on exactly how the fall actually occurred. Eddie Kendall, who had driven her to the County Market store, assisted her into the grocery store. With his assistance, Kendall made her purchase and reported the incident to the on-duty store manager, who completed an accident report.
On February 19, 1997, Kendall filed suit against Weingarten Realty, seeking damages for her injuries under both theories of strict liability and negligence. The trial court found that Kendall failed to prove the existence of an unreasonably dangerous condition and judgment was entered in favor of defendant. Kendall appeals and raises two assignments error, arguing that the district court erred (1) in its determination of whether the pothole posed an unreasonable risk of harm to Kendall, and (2) in its conclusion that Weingarten Realty had acted reasonably in its steps to repair any known defects in the parking lot and to adequately warn Kendall of any foreseeable dangers in the parking lot.

Discussion

Strict Liability of Weingarten Realty
Kendall's first assignment of error addresses the strict liability of Weingarten Realty as owner of the County Market parking lot for the damages caused by the alleged defect of that parking lot, i.e., the pothole. The incident at issue in this case occurred in 1996, making Weingarten Realty subject to La. C.C. art. 2317.1.[1] As a result of the Louisiana Legislature's adoption of La. C.C. art. 2317.1, fundamental changes to the strict liability concept have occurred, which changes now require plaintiffs who allege strict liability to prove that the defendant knew or should have known of the vice or defect. However, the evidence at trial showed, and the district court determined, that Weingarten Realty had knowledge of the general presence of potholes in that parking lot, if not specific knowledge of the pothole at issue. Thus, considering Weingarten Realty's knowledge of the alleged defect, an analysis of its strict liability under the pre-amendment jurisprudence would be appropriate.
In this matter, the district court determined that the central issue was whether there existed an unreasonable risk of harm in Weingarten Realty's County Market parking lot. In applying the unreasonable risk of harm analysis in a similar defective parking lot case, the Louisiana Supreme Court stated:
It is common for the surfaces of streets, sidewalks, and parking lots to be irregular. It is not the duty of the party having garde of the same to eliminate all variations in elevations existing along the countless cracks, seams, joints, and curbs. These surfaces are not required to be smooth and lacking in deviations, and indeed, such a requirement would be impossible to meet. Rather, a party may only be held liable for those defects which present an unreasonable risk of harm.
Reed v. Wal-Mart Stores, Inc., 97-1174 (La.03/04/98), 708 So.2d 362, 363. In Johnson v. Brookshire Grocery Co., 32,770 (La.App.2d Cir.03/01/00), 754 So.2d 346, *174 writ denied, XXXX-XXXX (La.05/26/00), 762 So.2d 1107, a case with somewhat similar facts to that at hand, this court recently applied this same analysis.
In determining a party's strict liability, a plaintiff must prove that the vice or defect of the thing is a condition which poses an unreasonable risk of harm to others. Johnson, supra at 350. A determination of whether a thing presents an unreasonable risk of harm should be made "in light of all relevant moral, economic, and social considerations." Celestine v. Union Oil Co. of California, 94-1868 (La.04/10/95), 652 So.2d 1299 at 1303-1304, quoting Entrevia v. Hood, 427 So.2d 1146 (La.1983). In applying the risk-utility balancing test, the fact-finder must weigh such factors such as gravity and risk of harm, individual and societal rights and obligations, and the social utility involved. Boyle v. Board of Supervisors, LSU, 96-1158 (La.01/14/97), 685 So.2d 1080.
The Louisiana Supreme Court in Reed, supra at 364, determined that, "Because of the plethora of factual questions and other considerations involved, the issue [of whether an unreasonable risk of harm exists] must be resolved on a case-by-case basis." In fact, this court also previously determined in Johnson, supra at 350, that:
The determination that a defect presents an unreasonable risk of harm predominantly encompasses an abundance of factual findings, which differ greatly from case to case. The unreasonable risk of harm criterion entails a myriad of considerations and cannot be applied mechanically. Consequently, the findings of the jury or trial court should be afforded deference and thus, the ultimate determination of unreasonable risk of harm is subject to review under the manifest error standard. A reviewing court may only disturb the lower court's holding upon a finding that the trier of fact was clearly wrong or manifestly erroneous. [Citations omitted] [Emphasis added]
The Reed court determined that after the fact finder's determination of whether an unreasonable risk of harm exists, such a determination must be evaluated by the reviewing court under the manifest error standard of review. Id. at 365.
In this case, although there was contradictory testimony regarding how Kendall's fall occurred, the district court determined that she stepped into the water-filled pothole upon exiting her nephew's vehicle, and she then fell to the ground.[2] The district court noted that Weingarten Realty had garde of the parking lot, along with knowledge that there existed similar potholes in the parking lot. The evidence produced at trial indicated that the pothole was located in a parking place in the County Market lot, not on a crosswalk or an area otherwise designated primarily for pedestrian traffic. Particularly noted by the district court, and of particular importance to this court, was the fact that "[T]his defect was located in an area of the parking space that would ordinarily be protected by the presence of a parked vehicle." The district court further acknowledged the great utility of the County Market parking lot, recognizing it as a "firm, relatively smooth, well-lighted and well-drained area" for the store's customers to park. Further in its reasons for judgment, the district court noted that Weingarten Realty should not be held to a duty to maintain a perfect parking lot free from all defects, because such a duty would be impossible and cost-prohibitive. With these considerations, the district court concluded that the defect in the parking lot represented a slight risk *175 which was inconsequential when compared with the high utility of the County Market parking lot, and, therefore, the pothole did not pose an unreasonable risk of harm to Kendall.
Kendall argues that the district court erred, not in applying the risk-utility balancing test, but specifically in its application of the test, arguing that the district court erroneously analyzed the utility of the parking lot and not the pothole. Kendall notes that Reed, supra at 365 specifically states that "[T]he trier of fact must decide whether the social value and utility of the hazard outweigh, and thus justify, its potential harm to others," arguing that the court's use of the word "hazard" refers to the actual defect. However, we believe Kendall's argument is misplaced, as the Reed court did indeed consider the utility of the paved parking lot in light of the alternative-an unpaved parking lot. Id. at 366. Other courts faced with similar fact scenarios in parking lots have also considered the utility of the paved parking lot. See Williams v. Leonard Chabert Medical Center, 98-1029 (La.App. 1st Cir.09/26/99), 744 So.2d 206, 211, writ denied, XXXX-XXXX (La.02/18/00), 754 So.2d 974; Kimbrell v. Macarthur Village Ltd. Partnership, 97-1647 (La.App. 3d Cir.04/22/98), 712 So.2d 603, 607; Summerville v. Louisiana Nursery Outlet, Inc., 95-2224 (La.App. 1st Cir.06/28/96), 676 So.2d 238, 241, writ denied, 96-1921 (La.11/01/96), 681 So.2d 1263. Likewise, Boyle, supra concerned a fall due to a depression in a sidewalk on the LSU campus, and the Louisiana Supreme Court similarly addressed the social utility of the entire sidewalk system on university campuses. Id. at 1083. Therefore, we conclude that the district court properly assessed the utility of the parking lot owned by Weingarten Realty rather than the utility of the pothole, as suggested by Kendall.
Further, considering the particular facts of this case, we do not believe Johnson, supra, to be so persuasive in Kendall's favor as she would lead us to believe. The facts in this case are clearly distinguishable from the facts in Johnson, supra. As the evidence at trial indicated, and as the district court found, the pothole in this case was located in a place where a vehicle would normally be parked, implying that the pothole was not in an area necessarily meant to be regularly traversed by foot. On the other hand, the pothole in Johnson was located in a crosswalk situated directly in front of the store's entrance. Id. at 351. Moreover, we note that the Johnson court emphasized, as did the Louisiana Supreme Court in Reed, supra, that a determination of unreasonable risk of harm is factually dependent, and the analysis applied in making the determination should not be applied "mechanically." Id. at 350.
Therefore, considering the foregoing, we hold that the district court was not manifestly erroneous in its determination that the parking lot did not pose an unreasonable risk of harm to Kendall. We conclude that Kendall's assignment of error lacks merit and that Weingarten Realty was not strictly liable to Kendall considering this particular set of facts.

Negligence by Weingarten Realty
Kendall argues that Weingarten Realty acted negligently toward her, and in her second assignment of error maintains that the district court erred in its determination that Weingarten Realty (1) acted reasonably despite its failure to repair the defect to the County Market parking lot, and (2) did not have a specific duty to warn Kendall of the dangers associated with the pothole.
Primarily, we recognize that, generally, negligence is defined as conduct which falls below the standard established by law for the protection of others against an unreasonable and foreseeable risk of harm. Clark v. Ark-La-Tex Auction, Inc., 593 So.2d 870, 876 (La.App. 2d Cir. 1992), writ denied, 596 So.2d 210 (La. 1992), citing Dobson v. Louisiana Power and Light Co., 567 So.2d 569 (La.1990); Barnes v. Thames, 578 So.2d 1155 (La. *176 App. 1st Cir.1991), writ denied, 577 So.2d 1009 (La.1991). As discussed previously, we have determined, as did the district court, that the pothole at issue in this case did not pose an unreasonable risk of harm to Kendall. Therefore, because the pothole was not an unreasonable risk of harm, we conclude that Weingarten Realty did not act negligently towards Kendall. This assignment of error is also without merit.

Conclusion
Accordingly, for the foregoing reasons, the judgment below is affirmed at Kendall's cost.
AFFIRMED.
WILLIAMS, J., concurs. The trial court did not abuse its discretion. Its findings are supported by the record.
NOTES
[1] La. C.C. art. 2317.1 states as follows:

The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.
[2] We note that although the district court found that Kendall, who admittedly suffers from glaucoma, fell as she exited her nephew's vehicle, this finding of fact was hardly conclusive. Kendall's previous deposition testimony, the testimony of the eyewitness to the fall, and the accident report prepared shortly after the fall all indicate that Kendall was completely outside of the vehicle when her fall occurred. However, at trial Kendall insisted she fell while exiting the car.