GRAVOIS, J.
*912 In this trip and fall case, plaintiff, Lisa Taylor, appeals a summary judgment granted in favor of defendants, Lauricella Land Company, LLC, Lauricella & Associates, Inc., Elmwood Village Center, LLC, Elmwood Retail Properties, LLC, and Travelers Property Casualty Company of America ("defendants"), dismissing her suit with prejudice. In her petition for damages, Ms. Taylor alleged that she sustained injuries after she tripped and fell on an expansion joint in the concrete parking lot adjacent to the Chipotle restaurant belonging to Chipotle Mexican Grill of Colorado, L.L.C. ("Chipotle") on Clearview Parkway in Elmwood, Jefferson Parish, Louisiana. On appeal, Ms. Taylor argues that the trial court erred in granting judgment in favor of defendants, contending that genuine issues of material fact remain outstanding regarding whether the expansion joint was unreasonably dangerous or open and obvious. For the following reasons, we affirm.
FACTS AND PROCEDURAL HISTORY
On July 16, 2013, Ms. Taylor was on her way home to Avondale from her workplace in Metairie when she decided to stop at the Chipotle restaurant to pick up dinner to bring home. She testified in her deposition that she had stopped at this particular Chipotle restaurant a couple of times before to pick up food. After she parked her car, Ms. Taylor traversed the parking lot to the entrance of the Chipotle restaurant, but as she walked by the handicapped parking space, she stepped on an expansion joint in the parking lot, which caused her wedge shoe to tip sideways. Ms. Taylor tripped and fell, breaking her arm, as well as sustaining bruises and scrapes to her leg. Her injuries were treated that evening at a hospital. Ms. Taylor's arm required surgery to repair two broken bones with a plate and screws.
Ms. Taylor filed suit against defendants and Chipotle on July 15, 2014, alleging that the expansion joint that she tripped upon was a defect in the parking lot that was unreasonably dangerous to pedestrians.
After discovery was conducted, defendant Chipotle moved for summary judgment on the basis that it had no legal or contractual responsibility to maintain the parking lot where the accident occurred. Chipotle's motion for summary judgment was granted, dismissing it from the case with prejudice. This judgment was not appealed and is final.
The remaining defendants moved for summary judgment on July 20, 2017, alleging that the expansion joint in question did not pose an unreasonable risk to pedestrians as a matter of law because the depth and measurements of the joint complied with relevant safety codes, as determined by defendants' expert, William Argus, AIA, an architect, following an inspection of the expansion joint. Defendants supported their motion for summary judgment with Ms. Taylor's deposition, the expert report of Mr. Argus, as well as photos *913 of the parking lot and the expansion joint. Defendants further argued that the expansion joint was open and obvious, and thus did not pose an unreasonable risk of harm to pedestrians.
Ms. Taylor opposed defendants' motion for summary judgment, supporting her contention that the expansion joint was unreasonably dangerous with the report of her expert witness, Ladd P. Ehlinger, AIA, also an architect.
The matter was heard on November 28, 2017, after which the trial court took the matter under advisement. The trial court rendered a written judgment on December 13, 2017, granting summary judgment in favor of all remaining defendants and dismissing Ms. Taylor's suit with prejudice. The trial court did not issue reasons for judgment. This timely appeal followed.
On appeal, Ms. Taylor argues that genuine issues of material fact remain outstanding regarding whether the expansion joint she tripped on was unreasonably dangerous, noting that her expert concluded that the depth of the expansion joint exceeded permissible values as found in relevant building and construction codes. She also notes the discrepancies in the measurements of the joint contained in the parties' experts' reports. She also argues that a material issue of fact remains as to whether the expansion joint was open and obvious, because the fact of the elevation differences was not apparent unless inspected at close range.
ANALYSIS
After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3). A fact is material if it potentially insures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. A genuine issue of material fact is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate. King v. Illinois Nat. Ins. Co. , 08-1491 (La. 4/3/09), 9 So.3d 780, 784.
The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. C.C.P. art. 966(D)(1).
Appellate courts review summary judgments de novo using the same criteria applied by trial courts to determine whether summary judgment is appropriate. Pizani v. Progressive Ins. Co. , 98-225 (La. App. 5 Cir. 9/16/98), 719 So.2d 1086, 1087. A de novo review or an appeal de novo is an appeal in which the appellate court uses the trial court's record, but reviews the evidence and law without deference to the trial court's rulings. Wooley v. Lucksinger , 06-1140 (La. App. 1 Cir. 12/30/08), 14 So.3d 311, 352 ; Sarasino v. State Through Department of Public Safety and Corrections , 16-408 (La. App. 5 Cir. 3/15/17), 215 So.3d 923, 927. The decision as to the propriety of a grant of a motion for summary judgment must be made with *914 reference to the substantive law applicable to the case. Muller v. Carrier Corp. , 07-770 (La. App. 5 Cir. 4/15/08), 984 So.2d 883, 885.
Ms. Taylor's claim is governed by Article 2317.1 of the Louisiana Civil Code, which provides:
The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.
Article 2317.1 actions require proof that the thing was in the defendant's custody,[1] that the thing contained a defect which presented an unreasonable risk of harm to others, that this defective condition caused the damage, and that the defendant knew or should have known of the defect.
There is no fixed rule for determining whether the thing presents an unreasonable risk of harm. The trier of fact must balance the gravity and risk of harm against the individual and societal rights and obligations, the social utility, and the cost and feasibility of repair. Simply put, the trier of fact must decide whether the social value and utility of the hazard outweigh, and thus justify its potential harm to others. Reed v. Wal-Mart Stores , 97-1174 (La. 3/4/98), 708 So.2d 362, 365. As the court noted in Reed , the issue must necessarily be resolved on a case-by-case basis due to the "plethora" of factual questions and other considerations involved.
In Reed , the Supreme Court considered the issue of whether the defendants were liable for a plaintiff's injuries after she tripped and fell after walking over an expansion joint in a concrete parking lot, similar to the one at issue in this case. The plaintiff's expert testified at trial that there were vertical height differences of ¼ to ½ inches along the expansion joint, and that the greater differential of ½ inch was unreasonably dangerous. The trial court held for the plaintiff, which judgment was affirmed by the court of appeal. The Supreme Court, however, reversed on the merits, citing to its recent opinion in Boyle v. Board of Supervisors, Louisiana State Univ. , 96-1158 (La. 1/14/97), 685 So.2d 1080, wherein the Court found that vertical differences alongside of a sidewalk joint between ½ inch and 1 inch did not pose a risk of unreasonable harm to pedestrians. In that case, the Court found that the trial court failed to undertake a risk/utility analysis before finding that the height difference presented an unreasonable risk of harm. The Court noted that the finding of a defect alone, i.e. , the vertical differences in the sidewalk joint, was not a sufficient analysis to establish liability. The defect must also present an unreasonable risk of harm. Boyle , 685 So.2d at 1083. The Court then undertook the risk/utility analysis that the trial court had failed to perform, specifically noting the social utility of paved sidewalks, the cost to repair not only the joint in question but all sidewalk joints on campus with height differentials, as well as considering the lack of accidents at this particular sidewalk joint in a high foot-traffic traffic area, which last factor the trial court had specifically refused to consider. Boyle , 685 So.2d at 1083-84. The Court concluded that the sidewalk joint in question was not unreasonably dangerous, and thus reversed the verdict for the *915 plaintiff, finding no liability on the part of the defendant-owner.[2] Boyle , 685 So.2d at 1084.
The Reed Court, before considering its prior holding in Boyle , noted that "[i]t is common for the surfaces of streets, sidewalks, and parking lots to be irregular. It is not the duty of the party having garde of the same to eliminate all variations in elevations existing along the countless cracks, seams, joints, and curbs. These surfaces are not required to be smooth and lacking in deviations, and indeed, such a requirement would be impossible to meet. Rather, a party may only be held liable for those defects which present an unreasonable risk of harm." Reed , 708 So.2d at 363.
After considering Boyle 's analysis and conclusions, the Court went on to consider the risk/utility analysis of paved parking lots and expansion joints:
As to weighing the social utility and cost of repair, the utility of paved parking lots is clearly apparent as unpaved parking lots would present far more hazards: potholes, wheel ruts, erosion damage, and infinite variation in elevation. As to the specific utility of expansion joints, they are necessary for safety and for maintenance of larger paved surfaces. The expansion joints allow for the concrete to expand and contact as it heats and cools due to weather. Absent the joints, the concrete blocks would contract and subsequently crack and split in the cold. Subjected to heat, the concrete would press against each other, cracking, shifting and buckling, which would produce far more hazardous deviations than the minor ¼ to ½ inches here. Additionally, the cost of maintaining such an area would be prohibitive as it would necessitate frequent replacement of the fragmented concrete blocks. The utility of the expansion joint is clear.
Reed , 708 So.2d at 366. The Court went on to hold that the cost of repair necessarily was not merely to correct the elevation differences of the joint in question, but of all joints with elevation differences, as a defendant would not be able to predict the exact place where someone might fall. Such cost, the court found, would be "staggering." Id. Finally, the Court considered that the size of the defect was smaller than the one considered in Boyle and found not to be unreasonably dangerous. Id.
In the present case, defendants supported their motion for summary judgment with Ms. Taylor's deposition and the report of their expert architect, Mr. Argus. Mr. Argus submitted both a preliminary report, made after an initial inspection of the particular expansion joint on August 21, 2015, and a final report with attachments, including measurements he took at a second site visit on March 14, 2017. In his initial visit, Mr. Argus measured the expansion joint to be 1? inches wide, with a black sealant/tar-like filler material. He found that the edges of the joint (each side of the filler material) rose approximately ? inch (+/-) above the filler material surface. At his second visit, he measured the joint's width at 2? inches wide, with a vertical depth of ? to 3/16 inches to ¼ inches.[3]
*916 Additionally, in his 2017 report Mr. Argus noted that it did not appear that any other slip and fall incident has occurred at the expansion joint in the parking lot since the building was opened in 2012, except for this incident. Attached to his final report were his notes and sketches from his 2015 site visit, as well as notes, sketches, and photographs from his 2017 site visit, Ms. Taylor's deposition, and research materials upon which he relied to compile his report. Mr. Argus cited to the applicable building codes in his report, though contending that while the codes were somewhat silent with regard to expansion joints specifically, they did provide guidance with regard to what height discrepancies would be considered a tripping hazard. Mr. Argus concluded that the expansion joint's measurements fell within an acceptable range of vertical differences under the relevant codes.[4]
Ms. Taylor opposed the motion for summary judgment with the expert report of Mr. Ehlinger. He inspected the expansion joint on September 8, 2017, and determined that the expansion joint exceeded the maximum depth and width permissible in the walking surface for "holes and abrupt vertical edges in the required means of egress with no visual warnings" and thus presented an unreasonable risk of harm to pedestrians. He measured the expansion joint horizontally as 2? inches wide. The vertical depth of the joint measured 17/32 inches deep to 33/64 inches deep to the top of the sealant in the joint. He found that the sealant which comprised the expansion joint gave way (compressed) to "perhaps" an additional ? inch in depth, when weight was placed upon it. The top of the sealant was "not sticky and is dry to the touch." He noted that the concrete edges of the joint were radiused on both sides at approximately a ¼ inch radius, which he opined made the joint edges steeper than the 1:2 horizontal slope of the ½ inch high permissible beveled joint depicted in the LSC (Life Safety Code), the ADAAG (Americans with Disability Act Accessibility Guidelines - 1991 Edition) and the ANSI (American National Standards Institute) Al 17.1 Handicapped Code.[5] Mr. Ehlinger's report did not discuss the area's accident history.
Though the trial court did not issue written reasons for judgment, the parties argued the applicability of Reed and its progeny. It is apparent from its ruling granting summary judgment to defendants that the trial court found the expansion joint in question did not pose a risk of unreasonable harm. A comparison of the expert reports' measurements of the expansion joint, though slightly different, do not create outstanding issues of material fact. Both experts measured the width of the joint as 2? inches. Defendant's expert measured the depth of the joint as up to ½ inches deep. Ms. Taylor's expert measured the joint as up to 33/64 inches deep, with "perhaps" an additional ? inch compression. Assuming the trial court accepted *917 Ms. Taylor's measurements, which differ from defendant's measurements by 1/32 of an inch regarding depth of the joint, these values show a smaller vertical distance than the one found not unreasonably dangerous in the sidewalk joint in Boyle , supra.
Ms. Taylor next contends that the expansion joint in question was not open and obvious because a pedestrian would have to "get down on their hands and knees to inspect the expansion joint" in order to determine the variances in the surface height of the panels on either side of the joint. Ms. Taylor argues that there were no warning signs to alert pedestrians walking to the restaurant where the expansion joint was located. She argues that according to her expert, an expansion joint such as this one would not be in most pedestrians' "cone of vision," thus requiring a visual warning to call it to pedestrians' attention, which visual warning was not present.
As this Court previously stated in Christiano v. S. Scrap Recycling , 13-595 (La. App. 5 Cir. 12/27/13), 131 So.3d 1059, 1063-64 :
Generally, a defendant has no duty to protect against an open and obvious hazard. Eisenhardt v. Snook , 08-1287 (La. 3/17/09), 8 So.3d 541, 544. In order for a defect to be considered open and obvious, the danger created by that defect must be apparent to all comers. Broussard v. State ex rel. Office of State Bldgs. , 12-1238 (La. 4/5/13), 113 So.3d 175, 192. If the complained-of condition should be obvious to all, then it may not be unreasonably dangerous. Id. at 188. The focus on whether an alleged defect is open and obvious is "on the global knowledge of everyone who encounters the defective thing or dangerous condition, not the victim's actual or potentially ascertainable knowledge."
Photographs of the expansion joint in question were made by both experts and were attached to their expert reports. The photographs clearly show the expansion joint in question, as well as other nearby expansion joints. The subject expansion joint, which was measured as 2? inches wide, was filled with a dark sealant material that clearly contrasted with the lighter colored concrete of the parking lot. The length of the joint was not measured, but the photographs clearly show that the joint was many feet long between two concrete panels. Photographs of the parking lot show that this expansion joint and others were a regular feature in the parking lot. The presence of the expansion joint was clearly visible, and thus open and obvious. Contrary to Ms. Taylor's assertion, the ability to discern the specific measurements of the differences in elevation of the expansion joints relative to the concrete is not the legal definition of "open and obvious," given the Supreme Court's recognition that "surfaces are not required to be smooth and lacking in deviations, and indeed, such a requirement would be impossible to meet." Reed , supra , 708 So.2d at 363.
The law is clear that expansion joints enjoy a positive utility in concrete paved parking lots, and that pedestrians cannot expect pristine and perfectly level surfaces in a paved parking lot, and that the vertical difference between the concrete slab and expansion joint in this case, 33/64 of an inch +/- ? of an inch (accepting Ms. Taylor's expert's measurements for the sake of argument), is one that has been recognized by the Supreme Court in Boyle as not posing an unreasonable risk of harm to pedestrians. These factors, combined with a lack of accidents at this location, support the trial court's judgment.
Accordingly, after a thorough de novo review of the record and application of the *918 relevant law, we find that no genuine issues of material fact remain outstanding and defendants are entitled to judgment as a matter of law.
CONCLUSION
For the foregoing reasons, the judgment on appeal granting defendants' motion for summary judgment is hereby affirmed.
AFFIRMED
JOHNSON, J., DISSENTS WITH REASONS
JOHNSON, J., DISSENTS WITH REASONS
I, respectfully, dissent from the majority opinion and find there is a genuine issue of material fact that remains in this matter that should preclude summary judgment at this juncture.
In the summary of Lisa Taylor's argument to this Court, the majority opinion simply states, "Ms. Taylor argues that genuine issues of material fact remain outstanding regarding whether the expansion joint she tripped on was unreasonably dangerous, noting that her expert concluded that the depth of the expansion joint exceeded permissible values as found in relevant building and construction codes." The opinion then proceeds to address whether the expansion joint was unreasonably dangerous based upon its depth. However, Ms. Taylor actually argues that the paving expansion joint in this matter exceeded the maximum width and depth permissible for a walking surface, not just the depth. In my opinion, the cases relied upon by the majority opinion- Reed v. Wal-Mart Stores, 97-1174 (La. 3/4/98), 708 So.2d 362, and Boyle v. Board of Supervisor, Louisiana State Univ. , 96-1158 (La. 1/14/97), 685 So.2d 1080 -while appropriate for an analysis for vertical height differentials, are distinguishable from this matter that contests a combination of vertical and horizontal differentials.
Ms. Taylor's expert's determination that the expansion joint's condition exceeded the maximum width and depth permissible posed a genuine issue of material fact that has not been resolved by the courts. Furthermore, the risk-utility analysis cited by the majority opinion is procedurally considered at trial because it is a determination of fact, and therefore, that analysis is not appropriate for summary judgment. (See , Broussard v. State ex rel. Office of State Bldgs. , 12-1238 (La. 4/5/13), 113 So.3d 175, 184, where the Louisiana Supreme Court held that the fact-finder must balance the gravity and risk of harm against individual societal rights and obligations when using the risk-utility balancing test.)
When considering whether the expansion joint in question was open and obvious, I disagree with the majority opinion's conclusion. Again, the majority opinion solely focuses its analysis on the vertical depth of the expansion joint, rather than considering the vertical and horizontal differentials. In my opinion, the vertical and horizontal differentials distinguish this matter from the case relied upon by the majority, Boyle , supra , and pose a genuine issue of material fact for the trial court to determine whether the alleged defect in the expansion joint was open and obvious.
For the foregoing reasons, I would reverse the trial court's judgment that rendered summary judgment in favor of the defendants and remand the matter for further proceedings.

Defendants' custody or garde over the parking lot is not contested.

Both the Reed and Boyle courts found that the applicable standard of review in those cases, which concerned the mixed question of law and fact regarding whether the defect was unreasonably dangerous, was manifest error. However, we note that in both Reed and Boyle there was a trial, unlike in this case in which a summary judgment was granted. Hence, the applicable standard of review in this matter is de novo , as noted above.

Mr. Argus noted in his final report, which was compiled after a second site visit and review of Ms. Taylor's deposition, that the location where Ms. Taylor said she fell, designated on Photo Exhibit 1, was not consistent with the location, on Photo Exhibit 2, where she said she fell. Therefore, he inspected and measured the expansion joint at both locations.

The building codes that Mr. Argus referenced in his reports were the International Building Code ("IBC"), the National Fire Protection Association ("NFPA") 101-Life Safety Code, and Americans with Disabilities Act Accessibility Guidelines ("ADAAG").

Mr. Ehlinger's report noted that his measurements differed from those taken by Mr. Argus, defendants' expert, concluding that Mr. Argus may have measured a different location, but also noted that the width and depth of the expansion joint will vary with temperature.