672 So.2d 254 (1996)
James C. BOYLE and Judith Boyle
v.
BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY AND AGRICULTURAL & MECHANICAL COLLEGE.
No. 95 CA 1803.
Court of Appeal of Louisiana, First Circuit.
April 4, 1996.
Writ Granted June 28, 1996.
*256 Hillar C. Moore, III, Baton Rouge, for Plaintiffs-Appellees.
Gail N. McKay, Baton Rouge, for Defendant-Appellant.
Before SHORTESS, PARRO, and KUHN, JJ.
SHORTESS, Judge.
On March 8, 1989, Judith Boyle (Boyle), a 40-year-old student, was injured when she tripped and fell on the campus of Louisiana State University and Agricultural & Mechanical College (LSU) in Baton Rouge. She sued the Board of Supervisors of LSU (defendant), contending her injuries were caused by a defective sidewalk. Her husband, James C. Boyle, joined in the suit seeking damages for loss of consortium.
After trial on the merits, the trial court ruled in favor of Judith and James Boyle (plaintiffs), finding a depression in the sidewalk was a defect, the defect caused plaintiffs' damages, defendant had constructive notice of the defect, and Boyle was free from fault. Judgment was entered in plaintiffs' favor in the total sum of $108,401.65. From this judgment defendant appeals.
Defendant raises seven specifications of error. One deals with an evidentiary issue, one involves quantum, and the remainder concern liability. We shall first address the evidentiary issue.

I. QUALIFICATION OF EXPERTS
Defendant contends the trial court erred in qualifying Michael J. Frenzel and Greer Coursey as experts. Frenzel was accepted as an expert in trip and fall accident investigation. A retired Air Force lieutenant colonel who has worked as a private safety consultant since 1985, Frenzel testified at length regarding his qualifications. He served as a safety officer in the Air Force for approximately ten years, is certified by several national safety organizations, taught a safety course at LSU, teaches safety seminars *257 both locally and nationwide, including slip and fall prevention programs, and has published articles on slip and fall accidents.
Coursey, a civil engineer who worked for the United States Corps of Engineers for 32 years and who now operates an engineering and consulting business, was accepted as an expert "in the area of determining concrete." He testified that his job duties with the Corps involved concrete and that during his career he had "either supervised or been involved with" over a million yards of concrete. His work experience included the design, placement, and repair of sidewalks.
Defendant contends the trial court should not have accepted Frenzel and Coursey as experts because they could not point to written standards upon which they based their opinions that the sidewalk was defective. Our review of Code of Evidence article 702, however, reveals no such requirement. That article provides a witness qualified by knowledge, skill, experience, training, or education may testify as an expert if his scientific, technical, or other specialized knowledge will assist the court. In accepting Frenzel as an expert, the trial court stated:
The qualification of an expert depends upon his knowledge and his experience in the line in which he is offered. And there's no question in this court's mind but that Mr. Frenzel is eminently qualified to serve as an expert in the area of trip and fall and accident investigation.
The trial court has considerable discretion in accepting or rejecting expert testimony. Its decision to accept an expert as credible will not be disturbed absent manifest error. Martin v. East Jefferson Gen. Hosp., 582 So.2d 1272, 1277 (La.1991); Williams v. Regional Transit Auth., 546 So.2d 150, 157 (La.1989); Harris v. Bronco Constr. Co., 93-2139 (La.App. 1st Cir. 10/7/94), 644 So.2d 805, 807, writ denied, 94-2740 (La. 1/6/95), 648 So.2d 931. In oral reasons, the trial court noted: "I know [defense] counsel seems to place little credence upon the testimony of the expert, but the court is particularly impressed with the testimony of Mr. Frenzel because I think it's based on assumptions which appear reasonable."
Considering the extensive knowledge and experience of Frenzel and Coursey regarding the subjects on which they testified, we find no abuse of the trial court's discretion in accepting them as experts and no manifest error in finding them credible.

II. LIABILITY
Defendant asserts five specifications of error regarding liability. Defendant contends the trial court erred 1) in finding the sidewalk was defective, 2) in finding the defect was a cause in fact of Boyle's accident, 3) in failing to apply a balancing test to determine whether the sidewalk was unreasonably dangerous, 4) in finding defendant had constructive notice, and 5) in failing to find Boyle contributorily negligent.

A. Standard of Review
All of these specifications of error allege erroneous findings of fact made by the trial court. A trial court's findings of fact must be reviewed under the manifest error-clearly wrong standard of review. The supreme court explained this standard in Stobart v. State, 617 So.2d 880 (La.1993):
A court of appeal may not set aside a trial court's ... finding of fact in the absence of "manifest error" or unless it is "clearly wrong." This court has announced a two-part test for the reversal of a [fact finder's] determinations:
1) The appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and
2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous).
This test dictates that a reviewing court must do more than simply review the record for some evidence which supports or controverts the trial court's finding. The reviewing court must review the record in its entirety to determine whether the trial court's finding was clearly wrong or manifestly erroneous.

*258 Nevertheless, the issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the [fact finder's] conclusion was a reasonable one. Even though an appellate court may feel its own evaluations and inferences are more reasonable than the fact-finder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony.... [T]his Court has emphasized that "the reviewing court must always keep in mind that `if the trial court or jury's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.'"
This court has recognized that "[t]he reason for this well-settled principle of review is based not only upon the trial court's better capacity to evaluate live witnesses (as compared with the appellate court's access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts." Thus, where two permissible views of the evidence exist, the [fact finder's] choice between them cannot be manifestly erroneous or clearly wrong.
Stobart, 617 So.2d at 882-883 (citations omitted).

B. Was the sidewalk defective?
Defendant contends the trial court was manifestly erroneous in finding the depression in the sidewalk was a defect.[1] The sidewalk was made of five-foot square blocks of concrete laid two abreast to form a ten-foot wide sidewalk. Soil conditions caused the corner of one block to sink where two blocks met in the center. Testimony varied on the size of this depression, ranging from 7/16-inch to 1 1/8 inches.
Joel Hebert, LSU's assistant physical plant director at the time of this accident, testified a depression of one-half to one inch was not considered a hazard by defendant. Student-employees who inspected the campus were told to report elevation changes in sidewalks of two inches or more. Coursey and Frenzel both testified, however, that a change in elevation of more than ½-inch was a defect. Although Hebert testified one of defendant's employees measured the depression on the morning of trial and found it to be 7/16-inch deep[2], Frenzel and Coursey found it to be approximately one inch.
Whether a defect existed is a factual question. We may not set aside the trial court's fact finding if there are two permissible views of the evidence, even if we are convinced that had we been sitting as the trier of fact, we would have weighed the evidence differently. Stobart, 617 So.2d at 882-883.
Plaintiffs' experts testified a depression of ½-inch or more constitutes a defect, while defendant's witnesses considered a depression of less than two inches insignificant. The trial court found the depression constituted a defect, stating:
The question then becomes, was this a defect. The expert testimony of the safety engineer [Frenzel] states that anything over a half inch vertical, ... that's the type of accident that it is likely to cause. And... in their expert opinion anything that would be a half inch or greater should be rounded off ... in some way so as to not pre[s]ent a totally vertical surfaceas opposed to a rounded surface which wouldn't cause your foot to suddenly stop. That's what I got out of the expert testimony.
... [T]he court is satisfied that there was a defect based on the expert testimony....
... According to [defendant's] witnesses, as far as sidewalks w[ere] concerned, they didn't consider anything less than a two inch subsidence to be significant enough to be reported.... They both admit that setting that two inch classification or category was purely arbitrary because it was their personal opinions.... *259 They, of course, are not safety engineers. Neither ... qualified as such and neither... had any training or background in safety engineering or as to what constitutes a hazard on a sidewalk....
The trial court obviously was more impressed with the plaintiffs' experts' opinions of what constituted a defect than it was with defendant's witnesses' opinions. The trial court's finding that this depression constituted a defect was a permissible view which was not manifestly erroneous.

C. Was the sidewalk unreasonably dangerous?
Defendant contends the trial court failed to apply a risk/utility balancing test to determine whether the sidewalk was unreasonably dangerous. Defendant contends the State cannot afford costly lawsuits which may arise from the numerous defects in LSU's sidewalks caused by the moisture in Louisiana's soil. It further contends that because it had no records of other accidents occurring in this location, the risk of injury was extremely slight and the magnitude of potential injury was extremely minor.
We assume defendant is referring to the balancing test set forth in Entrevia v. Hood, 427 So.2d 1146, 1149-1150 (La.1983), and Langlois v. Allied Chemical Corporation, 258 La. 1067, 1084, 249 So.2d 133, 140 (1971). In those cases, the supreme court stated that in determining whether a risk is unreasonable under Civil Code article 2317, the fact finder must study the law and customs, balance the claims and interests, weigh the risk and gravity of harm, and consider the individual and societal rights and obligations.
While the trial court did not explicitly apply this balancing test, he made reference to the above factors. There is no requirement in our law that the fact finder specifically enumerate the factors and make findings on each. In a jury trial, for example, the jury weighs these factors and simply reaches a conclusion. That the trial court performed this balancing test is implicit in his fact findings and ultimate conclusion.
The record reveals these facts which were before the trial court. This sidewalk clearly has social utility. It permits LSU students, employees, and visitors to walk across campus more easily. All witnesses agreed it is heavily used. This heavy use, however, increases the risk of injury should the sidewalk contain a defect. Defendant argued the lack of reported accidents at this site showed the risk was minimal. The trial court did not agree, stating: "The fact that no accident had ever happened in this particular area before is beside the point. If the situation is dangerous, there is going to be a first accident sometime. And in this case it happened to be with Mrs. Boyle."[3]
Defendant argues the cost of repairing all of the depressions greater than 1/2-inch deep in its sidewalks would be "enormous." This contention is not borne out by the record. Gary T. Durham, defendant's executive director of public safety and risk management, testified there are approximately twenty-five miles of sidewalks at LSU, and he knew personally "of a couple of areas that have some problems." Hebert testified the depression in the sidewalk was eventually repaired, but he could not state the cost of the repair because "it was a very minor job. It was just a matter of mixing up some epoxy grout and just putting it over the surface." Frenzel also testified that marking changes in sidewalk elevation with "safety yellow" paint would alert people to the danger at minimal expense.
Finally, the gravity of the harm to Boyle was great. The trial court stated it was "very clear that this lady has had a very serious injury which is going to have severe and permanent ... residual effect." While most people who trip on a crack in the sidewalk are not seriously injured, in this case Boyle was.
We find no manifest error in the trial court's factual findings and no legal error in the trial court's failure to explicitly detail his application of the balancing test, nor in his conclusion that the defect presented an unreasonable risk of injury.

*260 D. Was the defect a cause in fact of Boyle's accident?
Defendant contends Boyle fell due to a lack of attentiveness on her part, not because of a defect in the sidewalk. Defendant bases its contentions on these facts: 1) plaintiffs did not call Kathy Gable as a witness; 2) Boyle testified she did not stumble but felt as if she had been pushed (although she denied being pushed); 3) Boyle testified she did not feel her foot hit a raised surface; and 4) Boyle could not testify she saw the depression on the day of the accident, but only that she felt it with her foot as she lay on the ground after she fell.
Defendant seeks to invoke the principle that when a party does not call an available witness, it should be presumed the witness would have testified adversely.[4] Defendant does not explain the importance of Gable's testimony. Gable was a student at LSU who had some classes with Boyle. Boyle characterized her as an acquaintance to whom she talked occasionally. Gable did not witness the accident, according to Boyle, but happened by some time later after a crowd had gathered. Gable was as available to defendant as she was to plaintiffs. This argument has no merit.
Defendant also contends Boyle fell for some reason other than tripping on this depression. While Boyle did not see the depression on the day of the accident because she was in too much pain to move after her fall, Thomas B. Harrell, the LSU police officer who investigated the accident, saw the depression about one foot from one of Boyle's feet. Harrell testified Boyle told him at the scene that she had stepped in a hole or crack in the sidewalk. She pointed to the area where she believed she fell, and he then saw the depression. When shown photographs of the scene, he stated he had no reservations that they depicted where Boyle showed him she fell.
Boyle herself was certain the depression caused her fall. She testified:
Q. Mrs. Boyle, do you have any questions whatsoever about where it is that you fell and what it is that caused you to fall?
A. No, I don't. I mean, you know, I know that that's the spot that I fell and... that I fell forward at that spot from the depression in the sidewalk.
The trial court was impressed with Boyle's testimony. It stated:
I was very much impressed with the witness's candor. She certainly didn't try to misrepresent anything as far as the court and I understand she gave her version of the accident exactly as it happened and even though it might seem a little [bizarre] to counsel for the defense, the court has no problem with accepting the fact that this lady fell due to that defect in that sidewalk....
Furthermore, Frenzel testified Boyle's description of her fall was consistent with this type defect. The trial court found Frenzel's testimony credible. In his oral reasons, the trial court stated:
The question is, what made her fall? The most plausible explanation that the court has heard is based upon the expert testimony to the effect that the way she fell in the accident ... she fell forward on her face....
. . . .
Getting back to the indentation, the expert testimony shows that ... where it had sunk, the slab ahead of that was a straight vertical rise or at least it had been estimated anywhere from one-half to one inch or more.
And I think the expert testified that based upon what the scenario that Mrs. Boyle gave as to the circumstances surrounding the fall, that it's his opinion that it's more probable and more likely than not that what happened was that as she was walking, it could have been either her left or right foot, hit this vertical rise and stopped her foot, which is the thing that caused her to trip and fall forward flat.... The court is inclined to believe that that is *261 what happened and it's a fact that more probably than not, that that is what caused this accident.
Whether the defect in the sidewalk was a cause in fact of Boyle's accident and injuries is a question of fact. The trial court's finding that it was a cause in fact is a permissible view which cannot be manifestly erroneous.

E. Did defendant have constructive notice of the defect?
Defendant contends the trial court erred in finding it had constructive notice of the defect under Louisiana Revised Statute 9:2800(B). In Rhodes v. State, 94-1758, p. 15 (La.App. 1st Cir. 5/5/95), 656 So.2d 650, 662, this court held the notice requirement of Revised Statute 9:2800(B) was an unconstitutional infringement on the state's abrogation of sovereign immunity. The supreme court has granted writs and docketed the case as an appeal. 95-1848 (La. 1/3/96), 665 So.2d 1173. Due to the uncertainty of the law at this time, we shall address the issue of whether the trial court was manifestly erroneous in finding defendant had notice.
There was no evidence defendant had actual notice of the defect. There was, however, evidence the defect had existed for a number of years. Hebert testified defendant's only inspection program for its sidewalks was sending untrained student workers to do "surveys." The students were told to report any "tripping hazard," which Hebert described as an abrupt change in elevation of more than two inches. Hebert and Durham both testified they had walked over this sidewalk many times without noticing the defect. Hebert stated that if he had noticed it, however, he would not have reported it because he considered it too minor.
Defendant contends its lack of an inspection program absolves it from liability. In brief, defendant's counsel asserts "Louisiana State University could not have had constructive notice of the defect if they had no program for checking sidewalks."
The trial court disagreed, finding in oral reasons:
Then that brings us to the proposition of whether or not the LSU people had notice, either constructive or actual. Well, the testimony on that is pretty clear. I think both Mr. Durham and Mr. Hebert... testified, in effect, that LSU really had no specific program for checking sidewalks....
... The fact that you don't have actual notice doesn't necessarily mean that you can't have constructive notice. Constructive notice requires that you may have some sort of a reasonable periodic inspection which would expose these potential hazards or actual hazards and put you on notice that it is dangerous....
A property owner may not absolve himself from liability for hazards on his premises by shutting his eyes to all defects. Fox v. Housing Authority of New Orleans, 605 So.2d 643 (La.App. 4th Cir.1992). Given the length of time this defect existed and the opportunity defendant had to discover it, together with Frenzel's testimony that it would have been discovered had defendant made routine inspections, we cannot say the trial court was clearly wrong in finding defendant had constructive notice, i.e., that it should have known of the defect.

F. Was Boyle negligent?
Defendant contends the trial court was manifestly erroneous in failing to find Boyle at fault in the accident. It argues Boyle must have been distracted because the accident occurred while a speaker was preaching in "free speech alley." Defendant also reasserts the same arguments that the accident was not caused by the depression but by Boyle falling for some other reason, arguments which were rejected by the trial court in finding the depression was a cause in fact. In oral reasons the trial court found:
I don't see anything in the record that wouldno argument has been made to the point that she was inattentive or anything, although counsel did touch upon that when he indicated that she might have been distracted by not looking, by turning back to look at the demonstration that was going on at the student center. But Mrs. Boyle's testimony, I think, on direct examination testified that she was looking ahead where she was going and she wasn't concerned with what was happening at the *262 center and I think she said she could possibly hear some noise or something going on over there, but she wasn't paying any attention to it but she was watching ahead and looking at this lady who was approaching her because the area was restricted there to some extent and the question of who was going to pass who[m] on what side or something like that occupied her attention more than anything at the student center. That's the impression and the conclusion that the court reached from her testimony.
So I can't find any reason to hold Mrs. Boyle at fault in any particular whatsoever.
In addition to these reasons, we also note Hebert and Durham testified they had walked on that sidewalk frequently and had never noticed the depression, and Frenzel testified the pattern of concrete squares disguised the change in elevation. We further note Frenzel's testimony that shrubs encroached on one side of the sidewalk and car bumpers overhung the other side, creating a tunnel effect which forced pedestrians to the center of the sidewalk. Boyle testified an oncoming pedestrian on the right side of the sidewalk caused her to move even further to the left, right into the path of the defect. We find no manifest error in the trial court's factual finding that Boyle was free from fault.

III. QUANTUM
Defendant contends the damages awarded to Boyle for general damages and Mr. Boyle for loss of consortium were excessive.
The correct standard for appellate review of a damage award is clear abuse of discretion. Theriot v. Allstate Ins. Co., 625 So.2d 1337, 1340 (La.1993). That discretion is vast and should rarely be disturbed unless it is, in either direction, beyond that which a reasonable trier of fact could assess under the particular circumstances. Hae Woo Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993), cert. denied, ___ U.S. ___, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994).
The trial court awarded Boyle $100,000.00 in general damages, which included pain and suffering, permanent disability, and loss of earning capacity. The court made extensive findings regarding Boyle's pain and disability resulting from this accident. Briefly, she had comminuted fractures of the elbow and radial head which required two surgeries. Her orthopedist described the injury as the worst of its type he had ever seen. She had approximately ninety physical therapy sessions which she described as very painful. She has a permanent 23% disability of the body as a whole because she now has limited motion of her right arm. She also injured her left arm, bloodied her nose, and chipped several teeth, and her graduation from college was delayed by a semester.
Considering the severity of Boyle's injuries, we find the trial court did not abuse its vast discretion in its award of general damages.
The trial court awarded Mr. Boyle $7,500.00 for loss of consortium. Mr. Boyle testified he worked sixty hours per week. Before this accident, Boyle did all of the housework. Following Boyle's surgeries and during her recuperation period, Mr. Boyle and their son did most of the housework. He also testified that marital relations were "the last thing on [his wife's] mind for quite a while." In light of these facts, we find the sum awarded was not an abuse of discretion.

IV. CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed. Defendant is cast with all costs of this appeal.
AFFIRMED.
NOTES
[1] The parties stipulated this sidewalk was owned and maintained by the State of Louisiana, through LSU.
[2] The employee did not actually measure the depression, which had been repaired. He measured the depth of the grout which had been placed in the depression.
[3] We also note defendant's review of the accident records did not appear very thorough.
[4] Whether this presumption is still viable after the enactment of Code of Evidence article 607(A) is questionable.