878 So.2d 889 (2004)
Ressie PAMPLIN and Alvin Pamplin, Plaintiffs-Appellees
v.
BOSSIER PARISH COMMUNITY COLLEGE, Defendant-Appellant.
No. 38,533-CA.
Court of Appeal of Louisiana, Second Circuit.
July 14, 2004.
Rehearing Denied August 12, 2004.
*890 Charles C. Foti, Attorney General, Louisiana Department of Justice, by Mark E. Posey, Assistant Attorney General, for Appellant.
Patricia N. Miramon, Shreveport, for Appellees.
Before GASKINS, CARAWAY and LOLLEY, JJ.
CARAWAY, J.
In this case, a student at the community college slipped and fell while walking on a campus sidewalk. The section of the sidewalk was composed of a metal plate providing a drain under the walkway. The metal plate was wet with condensate. A jury determined that the institution was liable for its student's accident and awarded damages. The institution appeals, asserting, inter alia, that it had no prior notice of the condition of the metal drain plate and that no prior accidents had occurred on the drain in question or on similar drains around the campus. Finding that the plaintiffs failed to prove that the defendant had prior knowledge or constructive notice that the sidewalk's condition presented a risk of injury, we reverse.

Facts
On January 18, 2000, Mrs. Ressie Pamplin, a retired homemaker, seriously injured her ankle after leaving a college bookstore and slipping on a metal plate (hereinafter the "Drain Plate") covering a drain area between the concrete portions of the campus sidewalk. Mrs. Pamplin was enrolled part-time at Bossier Parish Community College ("BPCC") and visited the bookstore early that morning to buy the textbook for her computer class. The weather conditions were clear, but nevertheless, the Drain Plate in question was wet, presumably due to condensate.
Mrs. Pamplin and her husband, Alvin, filed suit on October 20, 2000, alleging that the Drain Plate where she fell was "wet and slimy with dew or rain and weather *891 conditions," and that the "metal was a less tractive surface." Further, the petition alleged that the Drain Plate "was not made of a slip-resistant material," and that these conditions created an unreasonable risk of harm.
On January 19, 2001, The Board of Supervisors of Community and Technical Colleges (hereinafter "the State") on behalf of BPCC answered the petition, asserting as its defense that it could not be liable for the Drain Plate's condition because it neither owned the premises nor had assumed responsibility for their condition. The State's answer revealed that the campus was leased from the Bossier Parish School Board (hereinafter the "School Board") in 1997.
Following the State's answer, plaintiffs filed their amended petition adding the School Board as a party defendant on January 24, 2001. The School Board answered the suit and ultimately asserted a peremptory exception of prescription. The trial court dismissed it from the proceedings after finding that the Pamplins' claim against the School Board did not relate back and therefore was prescribed. This judgment was not appealed.
As shown by the photographs of the Drain Plate in the appendix to this opinion, the metal plate was approximately one foot wide. The plaintiffs do not claim that the Drain Plate was not flush with the level of the concrete. Rather, they asserted at trial that raised diamond-shaped traction bumps on the Drain Plate had been worn down by the pedestrian traffic. Other similar drains were installed along the sidewalks of the campus.
Although the School Board had previously operated BPCC on this same property, in 1997 BPCC became a state institution. Since the State began operating BPCC, its employees testified that no other slip and fall had occurred as a result of moisture on the metal plates. Joe St. Andre, who had worked at BPCC in different capacities for the School Board and the State since 1989, testified that he had no knowledge of any such accident occurring on the small campus during that time. The plaintiffs presented no evidence from either the School Board records or its personnel showing accidents from the various metal drains on the campus in the years before 1997.
Regarding the lease itself, the State cited Paragraph 15 regarding maintenance of the leased premises, which provided:

15.
...
The lessor shall be responsible for maintaining the entire building and site in good condition throughout the term of the lease. Lessor shall make all such repairs to the premises as may become necessary because of breakage or other damages not attributable to the negligence of the Lessee, its agents, or its employees. Lessor shall be responsible for any damages to Lessee's employees, agents, invitees, visitors, and property and/or equipment that are a result of Lessor's negligence to properly maintain the premises.
The matter was set for a jury trial on September 22, 2003. In late August, the State moved for summary judgment, arguing that it neither owned the premises upon which the accident occurred, nor assumed responsibility therefor under the particular provisions of its lease agreement with the School Board. Appellant argued in the alternative that it had no actual or constructive notice of any defect in the premises. The trial court denied this motion before trial.
A week before trial, the State filed a motion in limine to exclude the introduction of any evidence of subsequent remedial *892 measures that were taken after Mrs. Pamplin fell. This evidence concerned discovery responses showing strips of adhesive tape that were applied to the Drain Plate at some point in time. The State's motion was denied and evidence regarding the adhesive tape, as thoroughly reviewed below, was introduced at trial.
After a four day trial, the jury returned a verdict in which it determined the State to be 90% at fault for the accident and the School Board to be 10% at fault. The jury awarded damages to Mr. and Mrs. Pamplin. This appeal ensued.

Discussion
The State's first assignment of error complains that the trial court erred in denying its motion for summary judgment. This questioning of the trial court's denial of its motion for summary judgment is procedurally misplaced. In Hopkins v. American Cyanamid Co., 95-1088 (La.1/16/96), 666 So.2d 615, our Supreme Court instructed that appellate review of a trial court's denial of a motion for summary judgment is foreclosed after a full trial on the merits. The court stated:
The court of appeal decided this issue, not based upon the record, but upon the pleadings and evidence presented in support of the pre-trial motion for summary judgment. This was erroneous for the following reason: once a case is fully tried, the affidavits and other limited evidence presented with a motion for summary judgment  later denied by the district court  are of little or no value. Appellate courts should not rule on appeal after a full merits trial on the strength alone of affidavits in support of a motion for summary judgment that was not sustained in the district court. In such cases, appellate courts should review the entire record.
Id. at 624. Accordingly, in view of this ruling, while the issues of the State's duty and notice are properly before us by the appellant's argument, the evidence presented at the time of the pre-trial interlocutory ruling and the de novo standard of review for summary judgments are no longer pertinent. We will consider the issues raised in the State's argument in view of the evidence presented at trial under the manifest error standard of review.[1]
The State first claims that because the School Board owns the property and did not shift maintenance responsibility for the sidewalk to the State in the lease, the State has no liability under La. C.C. art. 2317.1 or La. R.S. 9:2800(C)[2] as the custodian of the property and breached no other duty to the plaintiff. This argument fails to recognize that, whether under Article 2317.1 or under Civil Code Article 2315, the State owes a similar duty to protect its students from the risk of harm of a known defective condition on its campus. We will therefore examine fault under both of these articles.

*893 Article 2317.1 Fault

An individual is responsible for the damage caused by things in his custody. La. C.C. art. 2317. The owner or custodian of a thing is answerable for damage caused by its defect only upon a showing that he knew or, in the exercise of reasonable care, should have known of the defect which caused the damage, that the damage could have been prevented by the use of reasonable care, and that he failed to exercise such care. La. C.C. art. 2317.1. Thus, to recover for damages caused by a defective thing, the plaintiff must prove that the thing was in the defendant's custody, that the thing contained a defect which presented an unreasonable risk of harm to others, that this defective condition caused the damage and that the defendant knew or should have known of the defect. Brown v. Williams, 36,863 (La.App.2d Cir.7/31/03), 850 So.2d 1116, 1120, writ denied, 03-2445 (La.11/21/03), 860 So.2d 555.
The State's argument disputing Article 2317.1 fault, which served as the predominant controversy at trial, centered over the "garde" of the sidewalk which it leased from the School Board.[3] The Louisiana Supreme Court has ruled that in the cases involving a bifurcation between the ownership and possession of a defective thing, such as in the lease setting, "[w]hether the law imposes a duty of garde ... is a factual inquiry." Doughty v. Insured Lloyds Ins. Co., 576 So.2d 461, 464 (La.1991). In other words, contrary to the State's argument, the court is not presented with a question of law in this context regarding duty or with a question which is decided solely by the language of the lease to which the plaintiffs were not privy. The lease setting creates a factual dispute regarding the "duty of garde," resulting in Article 2317.1 fault against either the lessor or lessee.[4] Some appellate rulings have even gone so far as to pronounce "that `custody' or `garde' of a thing cannot lie in both an owner and a lessee simultaneously." Guillory v. Foster, 634 So.2d 1372, 1375 (La.App. 3d Cir.1994); Tannehill v. Joguyro, Inc., 97-571 (La.App. 5th Cir.4/9/98), 712 So.2d 238, writ denied, 98-1275 (La.6/26/98), 719 So.2d 1060.
From the verdict finding the School Board at fault, it does appear that the jury placed the "duty of garde" for the Drain Plate on the School Board, there being no other relationship between the School *894 Board and Mrs. Pamplin from which a duty could otherwise arise. Nevertheless, with the elimination of strict liability, the "duty of garde" in a lease setting under Article 2317.1 has become overshadowed by the issue of notice or knowledge of the defect. This notice or knowledge of the defect now creates a negligence duty to protect guests on the leased premises from known defects which is uniformly applicable to both lessor and lessee alike.[5]
Therefore, we need not determine whether the jury was correct in placing the duty of garde on the School Board and finding it at fault in this case. The general tort duty of the State in relation to its students under Article 2315 provides a similar analysis for negligence whether or not the State had garde of the sidewalk.

Article 2315 Fault
Louisiana courts have adopted a duty-risk analysis in determining whether to impose liability under La. C.C. art. 2315 for the act or inaction of a defendant, such as the State. In order for liability to attach under a duty-risk analysis, a plaintiff must prove five separate elements: (1) the defendant had a duty to conform his or her conduct to a specific standard of care (the duty element); (2) the defendant failed to conform his or her conduct to the appropriate standard of care (the breach of duty element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of protection element); and (5) actual damages (the damage element). Pinsonneault v. Merchants & Farmers Bank & Trust Co., 01-2217 (La.4/3/02), 816 So.2d 270, 275-276.
The duty element of this case asks whether the State had a duty to conform its conduct to a specific standard. In deciding whether to impose a duty in a particular case, the court must make a policy decision in light of the unique facts and circumstances presented. Posecai v. Wal-Mart Stores, Inc., 99-1222 (La.11/30/99), 752 So.2d 762.
In defining the duty of the State in this case, there are two important relationships to consider. First, regardless of whether the State had the actual garde of the sidewalk, it clearly had the possession and use of the sidewalk for the two-and-one-half years prior to the accident. Second, the State had a relationship with its students who are invited to use its campus and the sidewalk access to its facilities.
From these circumstances, we find that the State owed a duty under Article 2315 to Ms. Pamplin which is comparable to the duty of a custodian under Article 2317.1. The State's duty was to act to protect its students from any unreasonable risk of harm that could arise from a defective condition on the campus which was known to the State.
The State's second argument is that it did not breach this duty because it lacked notice of the condition of the Drain Plate. Since the State had the continuous use of the sidewalk and had the maintenance duty regarding the removal of trash from the sidewalk, we believe that a constructive notice element not unlike the test of Article 2317.1 is included within the knowledge aspect of the State's duty and was required to be shown by the plaintiffs, *895 in the absence of the State's actual knowledge. Therefore, if, "in the exercise of reasonable care," the State should have known of this problem with the Drain Plate, it may be found negligent for the breach of its duty.
Plaintiffs had the burden at trial of establishing that the State knew or should have known that a dangerous condition existed as the result of the Drain Plate that posed an unreasonable risk of harm to its students. Plaintiffs argued that the notice was shown by the fact that the wet and slippery condition of the Drain Plate had always existed before the accident due to the weather, thus giving notice to the State. Additionally, while plaintiffs' expert did not state that the diamond shaped traction bumps on the Drain Plate were a defective design, he did testify that the steel traction bumps were worn. No evidence of scientific testing comparing the traction of the metal and the concrete was presented.
To the contrary, the State presented evidence that no accidents involving any of the similar drain plates located along the sidewalks of the campus had ever occurred since it took over campus operations from the School Board in 1997. Also, current employees of the State who were formerly employed at BPCC by the School Board before 1997 gave testimony that no other slip and fall accidents had occurred on a drain plate during the many years prior to 1997. The evidence showed that the Drain Plate was stable and flush with the adjoining concrete.
The most important ruling of our highest court concerning publicly maintained sidewalks is Boyle v. Board of Supervisors of Louisiana State Univ. and Agric. & Mechanical College, 96-1158 (La.1/14/97), 685 So.2d 1080. The decision found that a sidewalk irregularity at LSU did not present an unreasonable risk of harm, a threshold issue which the State in this case has not assigned as error.[6] Nevertheless, the ruling also has important implications for the issue of notice.
In Boyle, the court reversed a finding of liability on the public entity for a trip and fall caused by a crack in the sidewalk between two concrete slabs resulting in one slab being approximately one-inch higher than the other. The court said:
Courts have consistently held that state entities are not liable for every irregularity in a street or sidewalk. This Court, in White v. City of Alexandria, 216 La. 308, 43 So.2d 618 (1949) reversed the lower courts and held that a slab of sidewalk which was one-half an inch to two inches lower than the contiguous slabs did not present an unreasonable risk of harm to a plaintiff who was walking along the sidewalk and tripped on the irregularity. In so holding, the Court stated:
[A] municipality is not an insurer of the safety of pedestrians. It must keep the sidewalks reasonably safe, but the maintaining of them in perfect condition is not necessary. To render it liable in damages the defect complained of must be dangerous or calculated to cause injury.
For determining what is a dangerous defect in sidewalk ... there is no fixed rule; the facts and surrounding circumstances of each particular case control. The test usually applied, however, requires an answer to the question of whether or not the walk was maintained in a reasonable (sic) safe condition for *896 persons exercising ordinary care and prudence. White, supra [43 So.2d] at 620.
Id. at 1082. (Citations omitted).
Significant to our inquiry here regarding notice, is the fact that the one-inch expansion joint depression in Boyle presented a clearly visible problem which had existed for a number of years giving the defendant opportunity to discover it. See, Boyle v. Board of Supervisors of Louisiana State Univ. and Agric. & Mechanical College, 95-1803 (La.App. 1st Cir.4/4/96), 672 So.2d 254 (prior ruling of court of appeal finding that LSU had constructive notice of the sidewalk defect). Thus, in Boyle, under the risk-utility balancing test with an openly apparent irregularity being an undisputed fact, our highest court overruled the trier-of-fact and determined on policy grounds that not every visible and discoverable irregularity in a sidewalk results in the imposition of fault. With the issues of constructive notice and unreasonable risk of harm clearly intertwined in the Boyle ruling for visible irregularities in sidewalks, the court partially justified its conclusion of no liability by stating that "the fact that the first accident did not occur during the defect's existence of several years while heavy traffic provided the exposure, is a factor to be taken into consideration along with the size of the defect, in determining the relative risk of injury." Id., 685 So.2d 1080, 1083. See also, Reed v. Wal-Mart Stores, Inc., 97-1174 (La.3/4/98), 708 So.2d 362.
In contrast to LSU's ability to constantly observe the defect in Boyle, the alleged defect in this case was not obvious. Only during rain or other weather conditions, might the State have discovered that the less tractive surface of the Drain Plate presented a risk of harm. There was no evidence that a State employee had actually slipped in wet conditions or experienced a problem with traction on the Drain Plate.
Regarding the issue of constructive notice, the defect in this case is comparable to the latent defect in the large old tree in the ruling in Loescher v. Parr, 324 So.2d 441 (La.1975). In that case, Parr and his neighbors testified that the tree appeared healthy. It had obviously withstood the tests of nature over a long time. Before the Louisiana Supreme Court established in Loescher the new theory of strict liability under its interpretation of Civil Code Article 2317, the lower courts did not find that, in the exercise of reasonable care, the owner of the tree had the affirmative duty to test the tree's condition for a latent defect which an old tree might reasonably be expected to have developed. See, opinion of lower court, Loescher v. Parr, 312 So.2d 347 (La.App. 1st Cir.1975). The owner of the tree was not negligent because the old tree could have been tested. Instead, the owner could rely on his observation which reasonably indicated that the tree did not present an unreasonable risk of harm.
In this case, the State's observation of the condition of the sidewalk, even in damp weather conditions, also did not indicate that its students were experiencing a risk of harm. Under these circumstances, the State, in the exercise of reasonable care, was not required to have taken action by which it might have learned of the condition which caused this accident. Accordingly, we do not find that the State knew or, in the exercise of reasonable care, should have known, that the Drain Plate was defective.
Finally, in brief to this court, the Pamplins argue for the first time that they proved that a slip-resistant tape was applied to the Drain Plate before the accident and that this was evidence of the State's prior actual knowledge of the problem. *897 This contention is contrary to their argument to the trial court for the allowance of post-accident remedial evidence and their factual argument to the jury. Moreover, the factual contention is not supported by the record.
In the presentation of plaintiffs' case, the State's maintenance man, Roy Roby, was called to testify. In his testimony, he described a taping procedure for the Drain Plate which he performed and continuously monitored. He stated that the skid-resistant tape would become unglued and ragged by the pedestrian traffic and that he would routinely replace the tape.
As to the critical issue of the time of commencement of the procedure, plaintiffs' counsel established in the questioning of Roby that he had first performed the procedure at the directive of his immediate superior, Joe St. Andre. From St. Andre's testimony it was clear that he had first observed the tape on the Drain Plate after the accident and after the time he had taken the job as Director of Physical Plant in the summer of 2000. Yet, St. Andre was unsure whether the tape was on the Drain Plate when he became Director of Physical Plant.
During the State's questioning of Roby, however, his testimony made a turn in the timing of the taping. Unexpectedly, Roby remembered that the State's employee, David Francis, had first instructed him to implement the taping of the Drain Plate. He also revealed that both he and Francis had worked in maintenance services before January 2000, when the accident occurred. Roby, however, was unsure when the taping of the Drain Plate first occurred in relation to the accident date.
Neither the State nor the plaintiffs called Francis as a witness. Nevertheless, from Roby's testimony and the testimony of Raymond Carney, the following information about Francis was presented at trial. Francis was employed at BPCC by the State on the date of the accident. Carney, who had worked at BPCC since the fall of 1999, became the environmental, health, and safety director at the school in July 2000, six months after the accident. Carney testified that although the job and title of environmental, health and safety director was not employed prior to his first taking that role, safety duties were carried out prior to July 2000 by Francis. When Francis left BPCC at some time after the accident, Carney took over his former duties regarding campus safety.
From this testimony, any slight inference which the plaintiffs now first argue to this court that the skid-resistant tape could have been placed on the Drain Plate prior to the accident is overwhelmed by evidence indicating that Francis directed its placement by Roby after the accident. The plaintiffs presented evidence that no tape or remnants of tape were on the Drain Plate on the date of the accident. Plaintiffs' photos (see appendix), taken by plaintiffs' counsel after the accident, show no tape over the raised diamond metal plates. Roby's maintenance procedure of taping the entire Drain Plate and routinely re-taping it unquestionably had not begun prior to the accident. When arguing the admissibility of this taping evidence, the plaintiffs asserted La. C.E. art. 407's allowance for subsequent remedial measures for proof of the issue of garde. It was not asserted that the evidence established that the taping occurred prior to the accident and was thus relevant to the issue of the State's actual pre-accident knowledge of the need for better traction on the Drain Plate. Finally, in plaintiffs' argument to the jury, counsel described Roby's testimony as follows:
... Mr. Roby testified that at the time of Ms. Pamplin's accident he was unaware of any warning signs or anything *898 to indicate that the area would be wet or slippery. Mr. Roby testified that he put the non-skid tape out over the particular area where Ms. Pamplin fell after she fell. ... (Emphasis supplied).
Accordingly, the plaintiffs' newfound position that the jury could have determined that the State had actual knowledge of the condition and taped the Drain Plate before the accident finds no support from the record.

Conclusion
From our determination that the plaintiffs did not present evidence of the State's prior knowledge or notice of the condition of the Drain Plate, the judgment in favor of the plaintiffs is reversed. Costs of appeal are assessed to plaintiffs.
REVERSED.
APPLICATION FOR REHEARING
Before STEWART, GASKINS, CARAWAY, MOORE and LOLLEY, JJ.
Rehearing denied.
STEWART and MOORE, JJ., would grant rehearing.

*899 APPENDIX

NOTES
[1] A court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." Stobart v. State, through Dep't of Transp. & Dev., 617 So.2d 880 (La.1993).
[2] We note that while both parties have now cited with approval to this court the application of La. R.S. 9:2800(C) for governing the liability of public entities with "garde" over a defective thing, the jury was only instructed by the trial court, over no objections by the parties, under Articles 2317 and 2317.1 of the Civil Code. Nevertheless, since the addition of knowledge as an element under Art. 2317.1 has effectively eliminated strict liability in Louisiana, the two statutes are virtually the same. Williams v. City of Baton Rouge, 02-682 (La.App. 1st Cir.3/28/03), 844 So.2d 360. We will refer to this liability for the custodian of a thing in this opinion as Article 2317.1 fault.
[3] In the landmark ruling in Loescher v. Parr, 324 So.2d 441 (La.1975), although the issue of garde under La. C.C. art. 2317 was undisputed, the court noted that "the things in one's care are those things to which one bears such a relationship as to have the right of direction and control over them." Id., p. 449 fn. 7. This concept was further reviewed in a setting where ownership and possession of the defective thing was separated in two parties in Ross v. La Coste de Monterville, 502 So.2d 1026, 1032 (La.1987), and the court held:

[W]e conclude that an owner of a thing who transfers its possession, but not its ownership to another, continues to have the garde of its structure and is obliged to protect others from damage caused by structural defects arising before the transfer.
[4] In Mix v. Krewe of Petronius, 95-1793 (La.App. 4th Cir.5/22/96), 675 So.2d 792, the city/lessor was found liable for the defective lighting along the steps of the auditorium it leased to the Krewe of Petronius. While the Krewe's duty owed to its invitee, the plaintiff, was considered, the city was held solely liable. The court ruled that "Petronius must have had the `right of direction and control' such as would have allowed it to change the lighting and repaint the landing to provided a visual contrast." Id. at 796. In contrast, the court in Guillory v. Foster, 634 So.2d 1372 (La.App. 3d Cir.1994), found the lessee, and not the lessors, liable for a trip and fall from a board which the lessee affixed to the dance floor of its lounge as part of the railing around the band.
[5] Even in those contexts where the lessor has contractually placed responsibility on the lessee and has no garde of the premises, La. R.S. 9:3221 nevertheless recognizes liability on the lessor who "knew or should have known of the defect or had received notice thereof and failed to remedy it within a reasonable time."
[6] Since the State does not contest whether the Drain Plate was defective, we make no finding regarding that issue.