# STATE OF LOUISIANA

## COURT OF APPEAL, THIRD CIRCUIT

### 05-1285

F. M. "BUTCH" ROBERSON AND
PAMELA ROBERSON

VERSUS

LAFAYETTE OILMAN'S SPORTING CLAYS SHOOT, INC. ET AL.

**************
APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, DOCKET NO. 2002-1084
HONORABLE EDWARD D. RUBIN, DISTRICT JUDGE

*************
SYLVIA R. COOKS
JUDGE
**************

Court composed of Ulysses G. Thibodeaux, Chief Judge, Sylvia R. Cooks and James T. Genovese, Judges.

**AFFIRMED.**

Robert J. Williams
Attorney at Law
4830 Lake Street
Lake Charles, Louisiana 70605
(337) 562-1116
COUNSEL FOR PLAINTIFFS/APPELLANTS:
    F. M. "Butch" Roberson and Pamela Roberson

Philip E. Roberts
Roy, Bivens, Judice, Roberts & Wartelle
P.O. Drawer Z
Lafayette, Louisiana 70502
(337) 233-7430
COUNSEL FOR DEFENDANTS/APPELLEES:
    Lafayette Oilman's Sporting Clays Shoot, Inc. and
    First Financial Insurance Company

**COOKS, Judge.**

## STATEMENT OF THE CASE

F. M. "Butch" and Pamela Roberson filed suit to recover damages for injuries sustained when Mr. Roberson fell from a ladder while ascending a trap shooting tower. Plaintiffs appeal the judgment of the trial court granting a Motion for Summary Judgment in favor of Defendants, Lafayette Oilman's Sporting Clays Shoot, Inc., and its insurer, First Financial Insurance Company. For the reasons assigned below, we affirm the judgment of the trial court.

## STATEMENT OF THE FACTS

The Plaintiff, Mr. Roberson, is an officer and employee of R&R Trap Sales and Service, Inc., a corporation in the business of selling and/or renting supplies and equipment to companies which conduct trap shooting events. Lafayette Oilman's Sporting Clays Shoot, Inc. (Lafayette Oilman) is a Louisiana nonprofit corporation formed in January 1997 for the purpose of holding an annual trap shooting event to raise funds for scholarships for students studying the petroleum industry at the University of Louisiana at Lafayette. Doss Bourgeois serves as vice-chairman of the organization. Lafayette Oilman is insured by First Financial Insurance Company. Louisiana Sporting Clay, Inc. is a business which operated a shooting range on rural property located on Lake Martin Road in Lafayette Parish. Charles Hohorst is president of Louisiana Sporting Clays, Inc.

In 1999, Lafayette Oilman began preparations for its annual charitable event, the Lafayette Oilman's Sporting Clays Shoot. The event was originally scheduled to be held in St. Landry Parish, but because of logistical problems, a new venue had to be found. A representative of Lafayette Oilman contacted Louisiana Sporting Clayss, Inc., through Charles Hohorst, to inquire about the use of its facility off Lake Martin

2

Road for the weekend of October 8-9, 1999. Arrangements were made for the rental of the facility between Charles Hohorst and Lafayette Oilman. Although Louisiana Sporting Clays, Inc. leased the facility to Lafayette Oilman, which facility included the trap towers, it lacked the target-throwing equipment necessary to conduct the charitable event. Doss Bourgeois, as a representative of Lafayette Oilman, contacted R&R Trap Sales and Service, through its president, F. M. "Butch" Roberson, to supply the needed equipment. Mr. Roberson had a history of doing business with Louisiana Sporting Clays, Inc. when the facility was being regularly operated. Mr. Roberson stated he was able to supply and install the target-throwing equipment needed for the fund-raiser. The target-throwing equipment is located at the top of the trap towers on the grounds of the facility. The only means of access to the tower is a wooden ladder which was present at the facility before the 1999 tournament.

Mr. Roberson arrived at the shooting range a day or two prior to the event, and ascended and descended the wooden ladder several times prior to the fall. Unfortunately, at approximately 6:00 p.m. on October 9, 1999, while Mr. Roberson was ascending the ladder to retrieve his equipment at the conclusion of the event, the top rung of the ladder dislodged, and he fell approximately sixteen feet to a concrete surface and fractured his leg.

Mr. Roberson, and his wife Pamela, sued Lafayette Oilman, First Financial Insurance Company, Lafayette Oilman's Association, through Doss Bourgeois, Charlie Hohorst, individually and d/b/a/ Louisiana Sporting Clays, Inc. The Defendants, Lafayette Oilman and First Financial Insurance Company, filed a Motion for Summary Judgment. The trial court granted the motion and dismissed the Plaintiffs' claim against Lafayette Oilman's Sporting Clays Shoot, Inc. and First Financial Insurance Company. The Plaintiffs appeal asserting the following

3

assignments of error:

> 1. The trial court erred in finding the Defendants owed no duty to the Plaintiffs.
> 2. The trial court erred in finding the Defendants did not breach the duty owed to the Plaintiffs.
> 3. The trial court erred in finding O.S.H.A. regulations do not apply in this instance.

## LAW AND DISCUSSION

Mr. Roberson contends the wooden ladder created an unreasonable risk of injury, and Lafayette Oilman had a duty to inspect the ladder for defects prior to the event. He contends a reasonable inspection of the wooden ladder would have identified the defect and adding three twelve-penny nails to either end of each rung would have prevented the accident. In support of their position, the Plaintiffs submitted the affidavit of Gary S. Nelson, a technical consultant in the field of safety engineering, safety management, human factors engineering, and occupational health engineering. Mr. Nelson inspected the ladder subsequent to the accident and found the rung was affixed to the ladder using only two eight-penny nails, which he opined was inadequate to insure the rung would not detach. He concluded the ladder posed an unreasonably dangerous condition to individuals ascending and descending the ladder. Further, Mr. Nelson opined "[u]nder federal regulations, every employer is obligated to *furnish to each employee employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm.*" (emphasis in original).

*Duty under La.Civ.Code art. 2317.1.*

It is undisputed Lafayette Oilman leased the facility from Louisiana Sporting Clays, Inc. for the weekend of October 8-9, 1999, and it contracted with Mr. Roberson to provide the equipment needed to conduct the fund-raising event. The issue presented for our review is whether Lafayette Oilman, as the weekend lessee of

4

the facility, knew or should have known of the defective rung on the ladder which caused injury to an individual providing services for the event. Liability for damage caused by the ruin, vice, or defect of things in one's custody and control is found in La.Civ.Code art. 2317.1, which provides, in relevant part:

> The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.

Under this provision, in order to recover for damages, a plaintiff must prove: (1) the thing was in the defendant's custody and control; (2) the thing contained a defect which presented an unreasonable risk of harm to others; and (3) the defendant knew or should have known of the defect. *Pamplin v. Bossier Parish Community College,* 38,533 (La.App. 2 Cir. 7/14/04), 878 So.2d 889, *writ denied*, 04-2310 (La. 1/14/05), 889 So.2d 266. In a lessor/lessee situation, whether a lessee has custody and control of the leased premises sufficient to impose a duty of reasonable care is a question of fact. *Id. See also Mix v. Krewe of Petronius,* 95-1793 (La.App. 4 Cir. 5/22/96), 675 So.2d 792. The court in *Pamplin* stated:

> The Louisiana Supreme Court has ruled that in the cases involving a bifurcation between the ownership and possession of a defective thing, such as in the lease setting, "[w]hether the law imposes a duty of garde . . . is a factual inquiry." *Doughty v. Insured Lloyds Ins. Co.,* 576 So.2d 461 (La.1991). In other words, contrary to the State's argument, the court is not presented with a question of law in this context regarding duty or with a question which is decided solely by the language of the lease to which the plaintiffs were not privy. The lease setting creates a factual dispute regarding the "duty of garde," resulting in Article 2317.1 fault against either the lessor or lessee.

*Pamlin,* 878 at 893.

However, as noted in *Pamplin,*

> [W]ith the elimination of strict liability, the "duty of garde" in a lease setting under Article 2317.1 has become overshadowed by the issue of notice or knowledge of the defect. This notice or knowledge of the defect now creates a negligence duty to protect guests on the leased premises from **known** defects which is uniformly applicable to both lessor and lessee alike.

*Id.* at 894 (emphasis in original).

In *Pamplin,* a jury found both the State, as lessee, and the School Board, as lessor, liable to a student who slipped and fell on a wet drain plate on the campus of a community college. The appellate court reversed the jury verdict with regard to the State finding the plaintiffs failed to prove the State had prior knowledge or constructive notice that the wet drain plate presented an unreasonable risk of injury to students.

In the present case, Doss Bourgeois, vice-chairman of Lafayette Oilman, testified he leased the facility for the weekend event from Mr. Hohorst. He walked around the facility with Mr. Roberson to determine where the target throwing machines would be set up, but it was Mr. Roberson's responsibility to set up the machines at the top of the wooden tower. The defective rung was not visibly apparent to either Mr. Bourgeois or Mr. Roberson because both men used the ladder without incident on several occasions prior to and during the course of the event. Mr. Bourgeois testified "a lot of people went up and down the ladder . . . . I know I probably went up there once before Butch even getting there, to make sure no wasps and stuff like that were there probably. I don't recall if I was up there when the machine was put up. I'm gonna say a couple of times probably." He stated: "[I]f I'd have found something loose or didn't look right, I would have done something about it." Neither Mr. Bourgeois nor Mr. Roberson testified they observed anything to raise a suspicion that the rung may give way during use. There was no indication the rung was rotten, loosely attached or defective in any way and there was no prior warning

6

the rung might detach from the ladder. Moreover, Lafayette Oilman did not use the property on a regular basis and was in possession of the property where the ladder was located for a very limited time. The facts in this case are similar to those in *Bush v. XYZ Insurance Co.*, 38,867 (La.App. 2 Cir. 8/18/04), 880 So.2d 953. In *Bush*, a customer sued a store for injuries when a chair he was sitting on in the store collapsed. Although employees of the store had routinely tightened the screws on the chair, the evidence indicated the chair collapsed because of a defective metal weld hidden in the chair. The appellate court found the evidence failed to show anyone from the store either knew or should have known that the chair was defective and would collapse. We do not find the law imposes a duty on Lafayette Oilman, as a temporary lessee, to do more than it did to inspect the rungs for defects on the day of the event. There is no evidence to suggest an inspection several days prior to the event would have even exposed the non-apparent defect. The rung may have loosened because of repetitive use during the event, in which case, a normal inspection would not have uncovered the defect.

*O.S.H.A. Regulations*

The trial court found that O.S.H.A. regulations, which provide industry safety standards, were inapplicable. The record indicates Mr. Roberson was not an employee of Lafayette Oilman or Louisiana Sporting Clays, Inc. Therefore, the trial court was correct in finding O.S.H.A. regulations inapplicable.

In the present case, we do not find Lafayette Oilman knew or should have done more to discover the defective rung prior to the accident. Accordingly, we affirm the judgment of the trial court granting the summary judgment in favor of Lafayette Oilman and its insurer.

**DECREE**

Based on the foregoing review of the evidence, we affirm the judgment of the trial court granting the Motion for Summary Judgment in favor of Lafayette Oilman's Sporting Clays Shoot, Inc., and its insurer, First Financial Insurance Company. All costs of this appeal are assessed to F. M. "Butch" and Pamela Roberson.

**AFFIRMED.**