WILLIAMS, J.
hThe plaintiff, Stephanie Trippany, appeals a judgment in favor of the defendants, Bossier Parish Community College and the State of Louisiana, Board of Supervisors of Community and Technical Colleges.. The jury found that the defendants, did not breach a duty of care owed to the plaintiff. For the , following reasons, we affirm,
. FACTS
On July 19, 2011, the weather was sunny at 3 p.m., when- Stephanie Trippany, a *1243 student at Bossier Parish Community College (“BPCC”), arrived at the school. After entering Building F, Trippany walked approximately ten steps in the hallway, then slipped and fell in an area near the stairway. A short time earlier, BPCC employees and students had been carrying the-atre equipment from outside to the second floor of Building F when a brief rain shower occurred. Some pieces of equipment were placed next to the stairway to get them out of the rain before being taken upstairs. A BPCC custodian, Miranda Wallace, had assisted with bringing in the theatre equipment and was returning to the front entry area when she heard a scream. Wallace noticed a small puddle of water next to the stairs'and saw. Trippany sitting on the floor several feet away. Wallace contacted a security officer, Steve Porter, who responded to the accident scene. Porter wrote in his report that he observed a small puddle of water on the floor next to the stairs and spoke with Trippany, who said she had injured her left knee after slipping in water ,and falling. She later sought medical treatment for her left knee. Porter also spoke with Wallace and wrote that the equipment brought in from the rain was the source of the water he had seen on the floor. At the time of the accident, BPCC’s safety policy required employees to guard |2against water that drips onto the floor from wet items brought in after a rain shower. .
Subsequently, the plaintiff, Stephanie Trippany,' filed a petition for damages against the defendants, BPCC and the State of Louisiana, Board of Supervisors of Community and Technical Colleges (collectively, “BPCC”). The parties filed summary judgment motions, which were denied by the district court. After a trial, the jury found that BPCC had not breached the duty of care owed to plaintiff. The trial court rendered judgment in favor of BPCC in accordance with the jury verdict. Plaintiff appeals the judgment.
DISCUSSION
In two assignments of error, the plaintiff contends, the jury erred in making a determination that is contrary to the evidence presented. Plaintiff argues that BPCC employees breached the duty owed to her because they failed to remove the water from the floor contrary to defendant’s safety policy.
An individual is responsible for the damage caused by things in his custody. La. C.C. art. 2317. The owner of a thing is answerable for damage caused by its defect only upon a showing that he knew or, in the exercise of reasonable care, should have taiown of the defect which caused the damage, that the damage could have been prevented by the use of reasonable care and that he failed to exercise such care. La. C.C. art. 2317.1. No person shall have a cause of action based upon the liability imposed under Article 2317 against a public entity for damages caused by the condition of things within its care and custody unless the public entity had actual or constructive notice of the particular defect which caused the damage prior to the occurrence, and lathe public entity has had a reasonable opportunity to remedy the defect and failed to do so. La. R.S. 9:2800(C).
.Under the duty-risk analysis, a plaintiff must prove that the defendant owed a duty to conform his conduct to a specific standard of care, (duty element); defendant failed to conform his conduct to the appropriate standard, of care (breach of duty element); defendant’s substandard conduct was a -cause of plaintiffs injuries; and damages. Daigle v. City of Shreveport, 46,429 (La. App. 2 Cir. 10/5/11), 78 So.3d 753; Pamplin v. Bossier Parish Community College, 38,533 (La. App. 2 Cir. 7/14/04), 878 So.2d 889. Factual determinations by a trier of fact will not be disturbed on review in the absence of manifest error *1244 based upon the record as a whole. Rosell v. ESCO, 549 So.2d 840 (La. 1989).
In the present case, Steve Porter testified that in 2011, he was a security officer at BPCC and he responded to Building F to investigate plaintiffs fall. Porter stated that he spoke with plaintiff, who was sitting in a chair at the time, and with Wallace. Porter testified that he had prepared a report in which he wrote that he “observed a small puddle of water on the floor next to the stairs” and that the plaintiff had “slipped on water that was on the floor next to the stairway and fell down,” injuring her left knee. Porter also wrote that he had been “told that people involved with the theater had just brought in equipment from outside just after a slight rain shower. This was how the water got on the floor.” In his testimony, Porter described the water on the floor as “small droplets of water” covering an area approximately two inches wide and six inches in length. Porter acknowledged the report did not specify that plaintiff had slipped in the water that apparently had dripped from the equipment.
[ 4Keith Bruce, an employee of BPCC, testified that in 2011, he was working as a theatre technician. Bruce stated that on the day of the accident, he had been working with a group of approximately six students bringing stage scenery into Building F and up to the second floor. Bruce testified the weather was sunny when they began carrying in the flat scenery boards, which were thin and lightweight. He stated the rain began while they were carrying in the larger 4-by-8-feet platforms, so the last two platforms were placed next to the stairway to get them out of the rain while the other equipment was taken upstairs. Bruce testified that he went directly from the front door up the stairs and did not look at the floor next to the stairway where the equipment had been placed. Bruce stated that he did not see any water on the stairs or on the floor between the door and the stairway. Bruce testified that if the boards became wet they would have needed to be repainted, but he did not need to repaint the boards that day.
David Jones, an administrator at BPCC, testified that the BPCC safety policy requires employees “to guard against water that can drip onto the floor from wet items brought in after a rain shower.” Jones agreed that if a custodian brought in wet equipment and placed it on the floor, then the person should make sure there was no water left on the floor after the equipment was moved.
Miranda Wallace, a custodian at BPCC, testified that she was working in Building F in July 2011. Wallace explained that her job duties included sweeping, emptying trash and walking the building every 30 minutes to check the floors for liquids and clean up any that were found. Wallace stated that on the date of the accident it began lightly raining at approximately 3 p.m., while some individuals from the the-atre department | ¿were bringing equipment into the building. Wallace testified that she helped bring in some scenery boards and placed them on a table while others set down some pieces of equipment on the floor, leaning against the stairs. She stated that it wasn’t raining very hard and the equipment “wasn’t soaking wet.” Wallace testified that she did not see any water on the floor when the equipment was being brought inside. Wallace stated that after helping to carry the equipment upstairs, she was returning to the front area when she heard someone scream and she walked toward plaintiffs location. Wallace testified that she then saw water on the floor next to the staircase that was approximately 2-4 feet away from where plaintiff was sitting on the floor. Wallace stated that the water was “against the staircase” where the equipment had been *1245 placed, but the floor was dry where the plaintiff was located. Wallace testified that the boards she placed on the table were not wet and that she did not touch the equipment next to the stairs. Wallace stated the water apparently dripped onto the floor between the equipment and the stairs so that the small amount of water was not visible until the equipment was moved. Wallace testified that she was not told there was water on the floor prior to plaintiffs fall and afterward she mopped up the water after seeing the puddle. Wallace stated she did not know of any witness who saw plaintiff slip in the water alongside the stairway.
Stephanie Trippany testified that on the day of the accident she intended to go to the bookstore located in Building F. Trip-pany stated that she entered the building and had walked approximately 10 steps when her foot “slipped in a puddle of water” and she fell on her left knee. Trip-pany testified that she had been looking straight ahead while walking and did not see any water on the floor before slipping. Trippany stated that after falling,J^she looked around and saw water on the floor that she described as a larger puddle and two smaller puddles. Trippany testified that she did not see a sign warning of a wet floor or any BPCC employees nearby. Trippany stated that she spoke with a security officer, Porter, and told him that as she “walked to the right of the stairs my foot hit, I guess, the water that was on the floor” and she fell. Trippany testified that it was not raining when she walked from the parking lot to Building F, the pavement was not wet and she did not see any water on the floor as she entered the building. Trippany stated that she did not see any type of equipment placed next to the stairs.
The plaintiff argues in her brief that the jury was clearly wrong in finding that BPCC did not breach its duty to her because the college’s employees allowed water to drip on the floor. At trial, the jury heard the testimony of Wallace and her supervisor, Larris Clark, who testified that if Wallace had brought in wet equipment that dripped water on the floor and left water on the floor when moving the equipment then she would have violated BPCC’s safety policy. However, Wallace testified that she had placed equipment on a table, not next to the stairway, and that the equipment next to the stairs was moved by others while she was on the second floor. Based upon this testimony, the jury reasonably could have determined that Wallace did not breach the duty of care because she had not placed any equipment against the stairway or moved the equipment leaving water on the floor. The jury also could have determined that Wallace did not have a reasonable opportunity to remedy the condition created by the water since the testimony indicated that plaintiff entered the building only minutes after Wallace helped bring equipment upstairs and fell before the custodian could return to the area.
]7In addition, although the testimony suggests that there was water on the floor in the area where some equipment had been placed against the stairs, there is also evidence that plaintiff did not slip in the small amount of water located alongside the stairway. We note that plaintiff testified she saw water on the floor after she fell, but did not specify where the water was located in relation to her position on the floor. Nor did plaintiff say that any part of her leg, knee, dress or flip-flop sandals were wet from the water in which she said she slipped. Wallace testified that she did not see any water in the location where plaintiff had fallen. Wallace further testified in her deposition, which was admitted into evidence, that in order for plaintiff to have stepped in the water that was alongside the base of the stairway, her *1246 shoulder would have been brushing against the stairs and she would have fallen right beside the stairway, but plaintiff fell in an area approximately four feet away from the stairs.
The jury heard the testimony, weighed the credibility of the witnesses and considered the circumstances’ of the accident. The evidence presented supports a finding that plaintiff failed to satisfy her burden of establishing that BPCC breached its duty of care by creating a hazard which caused plaintiff to slip and fall. Based upon this record, we cannot say the trial court erred in determining that the defendants are not liable for plaintiffs'injury,-Thus, the assignments of error lack merit.
CONCLUSION
For the - foregoing reasons, the trial court’s judgment is affirmed. Costs of this appeal are assessed to the appellant, Stephanie Trippany.
AFFIRMED.